UNITED STATES *v.* BALL and another.

*(Circuit Court, D. Oregon.   August 5, 1887.)*

PUBLIC LANDS—RIGHT OF SETTLER TO CUT TIMBER.
     A settler on the public lands under the homestead act, pending his residence thereon, and prior to the issue of a final certificate, is like a person in possession under an uncompleted contract of purchase, and he is not authorized to cut or remove timber therefrom except for the purpose of preparing the land in the ordinary way for tillage; but if he does cut and remove timber therefrom for export and sale merely, and afterwards obtains a certificate from the register and receiver of his compliance with the law, as such settler, the United States cannot thereafter maintain an action against him for damages for cutting such timber, nor against any one to whom he may have disposed of the same, for the conversion thereof.

*(Syllabus by the Court.)*

Action to Recover Damages for the Conversion of Timber.
*Lewis L. McArthur*, for the United States.
*H. Hurley* and *Arthur L. Frazer*, for defendants.

DEADY, J.   This action is brought by the United States to recover damages for the conversion of timber alleged to have been cut from the public lands in Yamhill county.   It is alleged in the complaint that on January 1, 1881, and on divers days thereafter, and prior to February 1, 1884, John W. Green unlawfully cut from the public lands designated in the surveys thereof as the N. E. ¼ of the N. E. ¼, and the S. E. ¼ of the N. E. ¼, of section 30, township 2 S. of range 5 W. of the Wallamet meridian, 840,000 feet of growing timber, and made the same into saw-logs, which he removed to the defendants' saw-mill in Yamhill county;

that the defendants, well knowing the premises, took possession of said logs, and manufactured them into lumber, which they converted to their own use, to the damage of the plaintiff in the sum of $6,720.

The answer of the defendants contains three defenses, the first of which is demurred to by the plaintiff. In effect, the defense is that in November, 1880, said Green, being qualified to enter land under the homestead act, took possession of the N. ½ of the N. E. ¼, and the E. ½ of the N. W. ¼, of the section aforesaid, and filed his affidavit in the proper land-office as a settler thereon, under said act, and paid the fees required by law; that in January, 1886, he made his final proof of compliance with said act before the proper register and receiver, who thereupon made and delivered to him a final certificate to that effect, and that he is entitled to a patent for the land; that the defendants bought 239,680 feet of logs of said Green, which were cut off said homestead during the time he occupied the same under the act, and that said logs are a part of those mentioned in the complaint, and were only worth 15 cents per 1000.

On the argument of the demurrer, counsel for the plaintiff cited *U. S.* v. *Minor*, 114 U. S. 233, 5 Sup. Ct. Rep. 836, to prove that the United States are not precluded by the proceedings before the land-officers, under any of the various acts for the disposition of the public lands to settlers thereon; to show that such officers have, by the falsehood or fraud of the applicant, been imposed on, and induced to give him a final certificate in a case where he was not entitled to the same; while counsel for the defendant cite and rely on *Smith* v. *Ewing*, 23 Fed. Rep. 741, to prove that such certificate cannot be questioned or set aside except on a direct proceeding. But no question of this kind arises here. Under any circumstances, the certificate is at least *prima facie* evidence of the facts and conclusions stated therein. Neither does *U. S.* v. *Minor* countenance the idea that the certificate is subject to a collateral attack, but can only be set aside or overcome by a suit in equity instituted for that purpose.

The demurrer to the defense in this case admits the facts stated therein; the gist of which is that Green entered the premises under the homestead act, and having duly performed the subsequent conditions required by the same, and made due proof thereof, he received, in due form, a certificate to that effect from the register and receiver of the proper land-office.

A settler on the public lands, under the homestead act, must reside on and cultivate the same for five consecutive years before he is entitled to a certificate. Section 2291, Rev. St. In the mean time, the legal title to the land, and the timber thereon, is in the United States, and the occupant is not entitled to cut or remove any timber therefrom except as allowed by section 4 of the act of June 3, 1878, (20 St. 90,) which provides, in effect, that an "agriculturist" on the public land—a homesteader or pre-emptioner—shall not cut or remove timber therefrom except in the ordinary preparation of his "farm for tillage;" the manifest meaning of which is that the timber shall not be cut for the sake of the

timber, but for the improvement of the land. And this implies that the cutting and tillage shall not be far apart; that the plow must follow the axe. *U. S.* v. *Williams*, 9 Sawy. 377, 18 Fed. Rep. 475. In this matter the United States is to be regarded as any other vendor of real property, and the settler, prior to the issue of the certificate, as a vendee of such property, in possession under an uncompleted contract of purchase.

A person who goes into possession of real property under a contract of purchase, and abandons or fails to comply with the same, is liable in trespass for the profits of the land, or waste committed thereon, during his occupation. 1 Washb. Real Prop. 377; *Smith* v. *Stewart*, 6 Johns. 46; *Bancroft* v. *Wardwell*, 13 Johns. 489. But where a conveyance has been made to the vendee in pursuance of the contract of sale, or he has become entitled, by reason of compliance with the terms of such contract, to receive one, his right in and to the land relates back to the entry under the contract, and he cannot be held liable to the vendor for any profits he may have received from the land, or any waste committed thereon, in the mean time, although the latter were of such a character as cutting and removing timber thereon, under circumstances that would have given the vendor a right, in equity, to an injunction to prevent the impairment of the value of the property, pending the performance of the contract, and while it might, by the failure of the vendee, be thrown back on his hands. This, in my judgment, is the relation between Green and the United States since the issue of the final certificate. He has complied with his contract of purchase, so to speak, and has established the fact to the satisfaction of the officers designated by the law for that purpose, and is entitled to a patent for the premises. The right to a patent, as to the government, is equivalent to one issued. *Stark* v. *Starrs*, 6 Wall. 418.

But it has been suggested that, the defendants having received this timber from the settler, and converted it to their own use, while the contract of purchase was only partly performed, and the land belonged to the United States, they are liable therefor. Under the circumstances, they certainly took the chances of Green's complying with the law and obtaining the certificate. But if the performance of his contract, and the issue of the final certificate, relieves Green from liability for cutting and removing this timber when and as he did, it ought to prevent the United States from maintaining an action against his vendees for converting it to their use. Before the timber was cut, the United States had disposed of the land to Green, and afterwards acknowledged the performance of the conditions of sale. The plaintiff has had pay for the timber once, and has no right to claim it again from these defendants. If A. takes B.'s horse, and sells him to C., but afterwards pays B. for it, the latter cannot then maintain an action against C. to recover the horse or its increase.

The effect of the whole transaction between Green and the United States is to establish the right of the former to the land, and the timber thereon, from the time of the entry in the land-office; and all those who

claim under him for either the land or timber are entitled to stand in his shoes.

There is an allegation tagged on to this defense, to the effect that this timber was cut for the purpose of clearing the land for "agriculture," to which no attention has been paid.    There is another defense in the case founded on that fact.    But this defense admits, in effect, that the timber was not cut primarily for the purpose of preparing the land for tillage, within the meaning of the proviso to section 4 of the act of 1878, but for the purpose of export and sale; and it is sustained, on the theory that the subsequent compliance with the law under which the entry was made, and the issue of the final certificate to that effect, makes Green in legal contemplation the owner of the land from the date of his entry, with a right to cut and dispose of the timber thereon as he saw proper. The demurrer is overruled.