### UNITED STATES *v.* LYNDE *et al.*

*(Circuit Court, D. Montana.* August 10, 1891.)

1. **PUBLIC LANDS — NORTHERN PACIFIC RAILROAD — RIGHT TO CUT TIMBER FOR CONSTRUCTION.**

Act Cong. § 2, (13 St. U. S. 365,) granting to the Northern Pacific Railroad Company "the right, power, and authority * * * to take from the public lands adjacent to the line of said road, material of earth, stone, timber, etc., for construction thereof," was not intended to apply only to public lands contiguous to or adjoining the line of the road, but may extend to other lands.

2. **SAME—USE OF TIMBER ON ANY PART OF LINE.**

Timber taken from lands adjacent to the line of the railroad may be used for construction upon any part of it.

3. **SAME—USE FOR DOMESTIC PURPOSES.**

A citizen of the United States and resident of Montana territory may lawfully cut and remove timber from the public mineral lands for building, agricultural, mining, or other domestic purposes under the statutes of the United States, which provide that all citizens of the United States and other persons, *bona fide* residents of certain states and territories, including Montana, are authorized to fell and remove timber growing on public mineral lands, not subject to entry, for building, agricultural, mining, or other domestic purposes, subject to regulations prescribed by the secretary of the interior.

At Law. Action for unlawfully cutting timber on public lands.

*Elbert D. Weed*, U. S. Atty.

*Luce & Luce*, for defendants.

KNOWLES, J. This case was commenced in the district court of the third judicial district for the territory of Montana, sitting for the trial and determination of causes arising under the constitution and laws of the United States. The complaint sets forth that defendants, between the 1st of April, 1882, and the 1st of April, 1886, willfully and unlawfully, and without right, went upon the unsurveyed mineral lands of the United States which lie directly south of townships 3 and 4, in range 4 east, lying along the streams of Squaw creek and Spanish creek and the upper West Gallatin river, in Gallatin county, Mont. That said lands were 10 miles south of the surveyed lands, and extending along said streams for a distance of 30 miles; and that between said dates defend-

ants cut, carried away, and converted to their own use about 4,700,000 feet of pine and fir and other kinds of timber, standing, growing, and being on said lands, and cut the same into lumber, and sold and disposed of the same for their own use and benefit, and cut and carried away and converted to their own use about 300,000 feet board measure, of logs, and trees standing, growing, and being upon said land, which were not manufactured into lumber. That the aggregate value of said lumber and timber was $106,000, to which amount plaintiff was damaged. The summons issued in this case appears to have been served only upon the defendant Lynde. He alone appears, and in his separate amended answer to said complaint denies that he cut said timber upon the unsurveyed mineral lands of plaintiff in the amount alleged by plaintiff. Defendant then sets forth that defendants contracted with the Northern Pacific Railroad Company, a corporation organized and existing under the act of congress of the United States to furnish said company logs, railroad ties, bridge timbers, and other timber for the construction of its railroad from the Yellowstone river, in Montana territory, to the Mullan Pass, in said territory, and under and in accordance with said contract, and by the direction and authority of said company, for the purpose of furnishing said company with logs, railroad ties, bridge timber, and other timber and lumber for and to be used in the construction of its said railroad between the said points, and that these defendants became and were the contractors, agents, servants, and employes of said Northern Pacific Railroad Company for the purpose of delivering said logs, ties, and timbers, and lumber to and for the use of said company. That in pursuance of said contract, and by the direction and authority mentioned in plaintiff's complaint, defendants entered upon the lands mentioned in plaintiff's complaint, the same being public lands of the United States, and adjacent to the line of said railroad between the said points, and cut and removed therefrom the said logs, ties, timbers, and lumber. That defendants cut and delivered to said company 164,290 railroad ties, and 965,160 feet of bridge timbers. The said amended answer further sets forth that defendant did remove certain other logs and timbers from said land, amounting in all to about 281,290 feet, and not more, for building, mining, agricultural, and other lawful domestic purposes in the territory of Montana, none of which was cut for export or was exported from said territory. That said land was mineral land of the United States, and not subject to entry or disposal otherwise than as mineral lands under the mineral laws of the United States. That defendant Lynde was a citizen of the United States, and a *bona fide* resident of the territory of Montana, and that all of said timber was cut and removed for the purposes aforesaid, and not otherwise, and in accordance with the rules and regulations of the secretary of the interior, established and in force. Plaintiff replied to the new matter in the amended answer as follows:

"Denies that the timber cut and taken from the land mentioned in the complaint was taken or cut for the construction of any railroad adjacent to said lands; and denies that all of said timber so taken by defendants was used for

the construction of any railroad; and denies that the timber used in the Northern Pacific Railroad, and furnished by the defendant, was used on that railroad, or any railroad adjacent to the lands where the timber was cut."

The defendant Lynde moved the court for judgment on the pleadings, which motion was granted. Plaintiff excepted to this ruling, and appealed to the supreme court of Montana territory, assigning this ruling as error. Before the cause was decided in that court, Montana became a state in the Union; and by virtue of the enabling act authorizing Montana with other territories to form state constitutions, and be admitted into the Union, this court became the successor of the supreme court of the territory of this case, the United States being a party thereto. The questions presented for consideration are as to whether the new matter set forth in defendant Lynde's amended answer was a defense to the cause of action set forth in plaintiff's complaint, and as to whether the replication raised any issue upon this matter.

In the act of congress entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget sound, on the Pacific coast, by the northern route," (13 St. U. S. 365,) in the second section thereof it is provided: "And the right, power, and authority is hereby given to said corporation [Northern Pacific Railroad Company] to take from the public lands adjacent to the line of said road material of earth, stone, timber, and so forth, for the construction thereof." In construing this clause in that act, the point presented, so far as this case is concerned, is, what is meant by the terms "public lands adjacent to the line of said road?" When are lands adjacent to the line of said road? This question seems to have been considered by several courts. In the case of *U. S.* v. *Railroad Co.*, 29 Alb. Law J. 24, HOYT, J., said of the word "adjacent:"

"Sometimes it has a meaning given it which is synonymous with the word 'adjoining,' but it is often applied in a more extended sense, as in the vicinity or the neighborhood of ———. Congress, then, having selected from several synonymous words the one having, as applied to the subject in the section in which it is used, the broadest meaning and most extended signification of the whole, must be held to have intended the broadest, rather than the more restricted, signification to be given to it in the interpretation of said section, and therefore to hold that this section restricted the defendant to lands adjoining or contiguous to the line of the road would be contrary to all rules of interpretation; while, if we apply the usual rules, we must hold that its rights are extended by this section beyond lands adjoining or contiguous to its line of road to lands anywhere in the vicinity or neighborhood of its said line. * * * And we are of opinion that timber land nearest to the line of the road must be held to be in the neighboring timber land, even although there may intervene large tracts of land not timbered. * * * Therefore, though this timber be more than one hundred miles from the line of defendant's road, we are of the opinion that it must, under the circumstances, be held to be adjacent thereto, within the meaning of section two of defendant's charter."

This, it will be observed, was a construction of the very section here under consideration. In the case of *U. S.* v. *Railway Co.*, 31 Fed. Rep. 886, in construing the clause in the act of congress of March 3, 1875,

(18 St. U. S. 482,) entitled "An act granting to railroads the right of way through the public lands of the United States," in which the words "lands adjacent to the line of a railway" occurs, Judge HALLETT said:

"In a standard dictionary an illustration of the larger meaning of the word is given in this form: Things are adjacent when they lie near to each other without actually touching; as adjacent fields, adjacent villages, etc. It seems unreasonable to say that in this connection the word refers to the government subdivisions lying next to the right of way; and, if we should so declare, it would be difficult to point out what subdivisions are meant. Accepting the larger meaning of the word, the right to take timber from public lands under these acts extends naturally some distance from the right of way, and probably within ordinary transportation by wagon."

In the case of *U. S.* v. *Chaplin*, 31 Fed. Rep. 890, DEADY, J., in construing the last-named United States statute, said of the term "adjacent lands:"

"What is adjacent land, within the meaning of the statute, must depend on the circumstances of each particular case. Where the adjacent ends, and the non-adjacent begins, may be difficult to determine. On the theory that the material taken is taken on account of the benefit resulting to the land from the construction of the road, my impression is that the term 'adjacent' ought not to be construed to include any land save such as by its proximity to the line of the road is directly and materially benefited by its construction."

Considering these cases, it is evident that the adjacent land named in the charter of the Northern Pacific Railroad Company was not intended to be land contiguous to or adjoining the line of its railroad. And it seems to be left in some doubt as to what should be considered adjacent or neighboring land to said line of said railroad. It certainly is not definitely determined. We are led to the conclusion that it must be determined by the evidence in the case. The defendant alleges that the land from which he cut the timber described in the complaint was adjacent to the line of the Northern Pacific Railroad from the Yellowstone river to the Mullan Pass. Considering the other allegations in this defense set up in the answer, I think this raised a proper issue, and makes a justification for the cutting of the portion of timber furnished the Northern Pacific Railroad Company.

The question is then presented, does the replication of plaintiff deny the issue thus presented, namely, as to whether this land was adjacent to the line of the Northern Pacific Railroad? The first denial in the reply is that the timber cut and taken from the lands mentioned in the complaint was taken or cut for the construction of any railroad adjacent to said lands. This is not a denial that said lands were adjacent to the line of the Northern Pacific Railroad. It is simply a denial that the timber was cut for the construction of any railroad adjacent to such lands. Again, in the replication it is denied that the timber used on the Northern Pacific Railroad and furnished by the defendant, was used on that railroad, or any railroad adjacent to the lands where the timber was cut. Neither is this a denial, it will be observed, that the timber cut was used on the said railroad, but only that it was used upon that road adjacent to the land where the timber was cut. The issue presented in the an-

swer, **that the** land from which this timber was cut was adjacent to the line of that road, is not met by these denials. The first denial above considered does not say that the lumber so cut was not used in the construction of the Northern Pacific Railroad. In the case of *U. S.* v. *Chaplin, supra,* the court said:

"And in my judgment, even where a person not under contract with or in the employ of the company cuts timber on the public lands adjacent to the line of its road, and afterwards disposes of it to the company to be used in the construction of its road, and is so used, neither such person nor the company is liable as wrong-doers."

It does not seem, then, to be material as to whether or not the timber was cut for the express purpose of constructing the railroad or not, if it was actually used for that purpose. But this denial can hardly be said to be a denial of the contract set forth by defendant, that he contracted with the Northern Pacific Railroad Company to cut this timber from this land for the construction of its road, and that in pursuance of this contract defendant did cut this timber. It is not a fair denial that the line of the Northern Pacific Railroad is adjacent to the land from which this timber was cut. This effect could be given to this denial only by an inference or an argument. Viewing the denial that this timber was not used upon the Northern Pacific Railroad adjacent to the land from which it was cut, and we are presented with the question as to whether it should be used on such road at a point adjacent to such land, in order to prevent the liability of defendant. In the case of *Railroad Co.* v. *U. S.,* 34 Fed. Rep. 838, in construing the act of March 3, 1875, granting the right of way to railroads over the public lands of the United States, and the right to use timber and other materials taken therefrom in the construction of such railroads, in which language was used similar to that in the clause in the charter of the Northern Pacific Railroad Company as to adjacent lands, it was held that timber could be taken from land adjacent to a line of railroad over the public lands to be used on a portion of that railroad to which such land was not adjacent. If land was adjacent to a railroad, timber could be taken from it to be used on any part of such road. This would seem to me to be a reasonable construction of the grant to cut timber to be used in the construction of a railroad from land adjacent thereto. There being no denial in the replication but that the land from which this timber was cut was adjacent to the railroad, the denial that it was used in the construction of the railroad adjacent to such land raises no issue. But it may be urged that the defendant Lynde was not the person to whom the license to cut such timber was given. In the case of *U. S.* v. *Chaplin, supra,* DEADY, J., held that the railroad company was not required to take such timber in person from adjacent land, but could contract with other parties to cut and remove timber from such land for use in the building and constructing of its railroad.

Plaintiff also denies in its replication that all of the timber, etc., cut from the land described in the complaint was used for the construction of any railroad. This meets no issue presented in the answer. The

defendant did not so allege. On the contrary, he set forth that a portion of said timber so cut was used for building, mining, agricultural, and other lawful purposes in the territory of Montana, and that none of it was cut for export, or was exported from said territory. This is not denied. It being admitted that the land was mineral, then the defendant had a license to cut said timber for such purposes. It is provided in the statutes of the United States:

"That all citizens of the United States and other persons, *bona fide* residents of the states of Colorado or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove for building, agricultural, mining, or other domestic purposes any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States or territories or districts of which such citizen or person may be at the time *bona fide* residents, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations."

This is what this defendant alleges he did do as to a portion of this lumber, and this is not denied. The new matters set up as defenses to the cause of action set forth in plaintiff's complaint were sufficient, if admitted, to defeat the same. As these were not met by any proper denials, they must be considered as true, and the court properly granted the motion for judgment on the pleadings. Judgment of the district court affirmed.