## STONE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1894.)

### No. 153.

1. JUDGMENT—RES JUDICATA—ACQUITTAL OF CRIMINAL CHARGE.

An acquittal of a person indicted for unlawfully and feloniously cutting and removing timber from public lands in violation of Rev. St. § 2461, is not a bar to an action by the United States against such person to recover the value of such timber, as being wrongfully cut and converted. Coffey v. U. S., 6 Sup. Ct. 437, 116 U. S. 442, distinguished.

**2. SAME—PROPER TEST.**

A proper test, in determining whether a prior judgment between the same parties concerning the same matters is a bar to a subsequent action, is to ascertain whether the same evidence which is necessary to sustain the second action would have been sufficient to authorize a recovery in the first suit, if it had been given therein.

**3. APPEAL—REVIEW—AVAILABLE ERROR.**

Where two actions by the same plaintiff are consolidated and tried together, the defendant in one of such actions, who is also a defendant in the other action, and who exercises all the peremptory challenges allowed by law in his case, cannot, on appeal of his case, avail himself of an error of the court in overruling a peremptory challenge by defendants in the other case.

**4. RAILROAD COMPANIES—CONSTRUCTION OF ROAD—RIGHT TO TIMBER ON ADJACENT PUBLIC LANDS.**

Act March 3, 1875 (18 Stat. 482), which grants to railroad companies the right of way through public lands, and the right to take from the public lands "adjacent to the line of said road" timber necessary for its construction, does not authorize the taking of timber for the construction of a road from public lands 50 miles distant from the road.

**5. PUBLIC LANDS—SETTLERS—CUTTING AND SELLING TIMBER—LIABILITY OF PURCHASER.**

Where settlers on public lands file declarations under the pre-emption or homestead laws, with intent to defraud the government by removing and selling the timber thereon, and then leaving them, a purchaser of such timber is liable to the government for its value.

**6. SAME—ACTION FOR VALUE OF TIMBER PURCHASED—BURDEN OF PROOF.**

In an action by the United States to recover the value of timber cut from public lands, where defendant claims that he purchased the timber from settlers on such lands under the pre-emption and homestead laws, the burden is on him to show the good faith of such settlers, and their right to cut and sell such timber.

**7. SAME—INSTRUCTION.**

In such action, it is proper to refuse an instruction which withdraws from the jury evidence that defendant's vendors abandoned the land after cutting the timber, and leaves the question of their good faith to rest on the fact of their actual residence on the land when the timber was cut.

**8. APPEAL—REVIEW—OBJECTIONS WAIVED.**

The circuit court of appeals will not review an assignment of error based on any portion of the charge, when the record fails to affirmatively show that timely exceptions were taken thereto "while the jury was at the bar."

**9. SUNDAY—JUDICIAL PROCEEDINGS—SUBMITTING INTERROGATORIES TO JURY.**

In an action by the United States to recover the value of timber cut from public lands, the case was fairly and impartially submitted to the jury on Saturday. On Sunday the jury was brought into court, and the court submitted to them certain interrogatories, which the court requested them to answer if they could, stating that he desired answers "for the use of the government in other litigation." It was left optional with the jury to answer such questions, and the court declined to instruct them further. *Held*, that any objection to these proceedings should have been made at the time, and that there was nothing in the proceedings prejudicial to defendant.

**10. SAME—RECEIVING VERDICT.**

A verdict may be received on Sunday, though there is no statute authorizing it in the state in which the action is tried.

In Error to the Circuit Court of the United States for the District of Washington.

Action by the United States of America against John H. Stone to recover the value of certain timber cut and removed from public

lands. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

This action was brought to recover the value of certain timber alleged to have been taken from the public lands of the United States, and converted by the defendant (plaintiff in error) to his own use. There was pending at the same time a similar action, wherein the United States were plaintiffs, and John H. Stone, Edward Noonan, and W. G. Kegler, doing business as the Spokane Fuel Company, were defendants, which was consolidated and tried with this action. Both cases were tried together before a jury, and a verdict rendered in this action in favor of plaintiffs (defendants in error) for the sum of $19,000, and in the second action in favor of plaintiffs for $3,000. The verdict in the second action was, on defendants' motion, set aside. Only the first action, against Stone individually, is here for review upon its merits. The complaint alleges the ownership of the lands from which the timber was taken, and of the timber taken and converted, to be in plaintiffs; its value; the unlawful taking and conversion by defendants,—and prays for judgment for its value. The answer consists of a general denial of all the allegations of the complaint, except as to the quantity of timber alleged to have been sold to the Spokane Mill Company. As affirmative defenses, the answer avers, in substance: (1) That between the months of August, 1888, and November, 1890, the defendant had certain contracts with his customers for the supply of railroad ties, and timber for the manufacture of lumber, at points along the line of the Northern Pacific Railroad, in the state of Washington, adjacent to the region mentioned in the complaint; that he procured timber, for the purpose of filling these contracts, from the lands embraced in the grant to aid in the construction of the Northern Pacific Railroad, made by acts of congress for that purpose, and by contract with that company, and that he had not at any time cut timber on any other land, except such as belonged to said railroad company; that he purchased timber and ties suitable for railroad uses from other persons, but, upon information and belief, alleges that all such ties and timber were either cut from railroad lands, or were lawfully cut and sold to him by such other persons, and that no part thereof was cut or taken from lands of the United States; that the ties which he purchased were for the use of, and were used in, the construction of the Spokane & Palouse Railroad and the Central Washington Railroad, both corporations being organized and constructing their roads under and in compliance with grants made to them by the act of congress of March 3, 1875; that such taking was not a trespass, but was by authority of law. (2) That in the month of April, 1891, at a term of the United States district court for the district of Idaho, the defendant was indicted for the commission of all the wrongs and trespasses for which this action was brought, under section 2461 of the Revised Statutes of the United States, as an offense against the penal laws of the United States; that he was arraigned upon said indictment, and pleaded not guilty; that he was afterwards tried upon said indictment, acquitted by the verdict of the jury, and discharged therefrom; and that said acquittal and discharge constitute a bar to this action. The plaintiffs replied to all of the averments in the answer, except the second affirmative defense, and to this they demurred upon the ground that the defense therein stated as a bar did not state facts sufficient to constitute a defense to the action. This demurrer was sustained. Upon the trial, defendant offered to prove this defense by the production of the record of his acquittal and discharge. This evidence was refused. There are 18 specific assignments of error, which will be noticed under appropriate heads in the opinion.

John R. McBride, for plaintiff in error.

Wm. H. Brinker, U. S. Atty., for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). 1. Did the court err in sustaining the demurrer to that part of defendant's an-

swer which pleaded the indictment, trial, and verdict of acquittal in the Idaho court, and in excluding the same when offered in evidence?

That the judgment of a court of competent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence, conclusive between the same parties upon the same matter directly in question in another court, is too well settled to require discussion. It is also well settled that the plea of res adjudicata, except in certain special cases, is not only conclusive upon the questions which the courts were required to form an opinion and pronounce judgment on, but upon every point which properly belonged to the subject of litigation, and which was, or might properly have been, brought forward in the former suit. One of the safest rules for courts to follow in determining whether a prior judgment between the same parties, concerning the same matters, is a bar, is to ascertain whether the same evidence which is necessary to sustain the second action, if it had been given in the former suit, would have authorized a recovery therein. Under this test, is the judgment in the criminal case a bar to this action? What facts were required to be proven in order to sustain the respective actions? The criminal case in Idaho was instituted and prosecuted by the United States against the defendant for an alleged willful violation of a statute which, among other things, provided that:

"If any person shall cut, or cause or procure to be cut, or aid, assist, or be employed in cutting or shall wantonly destroy, or cause or procure to be wantonly destroyed, or aid, assist, or be employed in wantonly destroying any live oak or red cedar trees, or other timber standing, growing, or being on any lands of the United States * * * shall pay a fine * * * and be imprisoned not exceeding twelve months." Rev. St. U. S. § 2461.

The indictment charged that defendant, at the time and place and upon the public lands therein mentioned, "did then and there, unlawfully, willfully, and feloniously, cut and remove, and cause and procure to be cut and removed, from said lands, fifty thousand timber trees then and there being and growing upon said lands," etc. This was an essential averment, which was necessary to be proven in order to convict the defendant. The present action was brought to recover the value of the timber cut from the same lands. In order to sustain this action, it was only necessary, after establishing the title of plaintiffs to the lands, and the value of the timber taken therefrom, to prove that the defendant received and converted the timber to his own use. In other words, it was necessary, in the criminal case, to prove that the defendant, with knowledge that the lands belonged to the United States, and with the intent and purpose to defraud the government, either personally cut and removed the timber, or, with such knowledge and intent, caused and procured the timber to be cut and removed; while, to maintain this action, it was only necessary to prove that the timber belonged to the government, and that the defendant came into possession of it, and converted it to his own use without authority from the government. If, in establishing these facts, the evidence showed that the defendant was only an unintentional—not willful—

trespasser, or an innocent purchaser for value, or the purchaser from a trespasser without notice, the government would, under the principles announced in Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 Sup. Ct. 398, be entitled to recover. It will therefore readily be seen that, if the same evidence which was necessary to sustain the present action had been given in the former suit, it would not have authorized a conviction therein; and, under the test which we have stated, it would necessarily follow that the former judgment of acquittal is not a bar to the present action.

Is the test stated established by authority?

Freeman, in his work on Judgments, says:

"The best and most invariable test as to whether a former judgment is a bar is to inquire whether the same evidence will sustain both the present and the former action. If this identity of evidence is found, it will make no difference that the form of the two actions is not the same. * * * Whatever be the form of action, the issue is deemed the same whenever it may, in both actions, be supported by substantially the same evidence. If so supported, a judgment in one action is conclusive upon the same issue in any other suit, though the cause of action is different. On the other hand, if different proofs are required to sustain two actions, a judgment in one of them is no bar to the other. If the evidence in a second suit between the same parties is sufficient to entitle plaintiff to a recovery, his right cannot be defeated by showing any judgment against him in any action where the evidence in the present suit could not, if offered, have altered the result." 1 Freem. Judgm. § 259.

This principle is recognized in Miller v. Manice, 6 Hill, 121, cited by defendant, and is fully sustained by numerous authorities. Gayer v. Parker, 24 Neb. 643, 39 N. W. 845; Taylor v. Castle, 42 Cal. 371; Gilmer v. Morris, 30 Fed. 483; Riker v. Hooper, 35 Vt. 457; Ireland v. Emmerson, 93 Ind. 2; Gordon v. State. 71 Ala. 315; Percy v. Foote, 36 Conn. 102. But it is contended by defendant that the precise question involved in this case has been decided in his favor by the supreme court in Coffey v. U. S., 116 U. S. 442, 6 Sup. Ct. 437. That opinion does not support the position taken by defendant, and is not in any respect opposed to the conclusions we have reached. Coffey was a distiller of liquors, and a criminal information was filed against him for the violation of certain sections of the internal revenue laws. He was tried by a jury, and acquitted. Afterwards, a civil proceeding against the defendant to forfeit the property, under the same section of the statute, was instituted. The former judgment of acquittal was properly held to be a bar. Why? The decision of the court makes it perfectly plain, and, in our opinion, shows clearly and distinctly the difference between the facts of that case and this. In rendering the opinion, the court said:

"The principal question is as to the effect of the indictment, trial, verdict, and judgment of acquittal, set up in the * * * answer. The information is founded on sections 3257, 3450, and 3453; and there is no question, on the averments in the answer, that the fraudulent acts and attempts and intents to defraud, alleged in the prior criminal information, and covered by the verdict and judgment of acquittal, embraced all the acts, attempts, and intents averred in the information in this suit. The question, therefore, is distinctly presented, whether such judgment of acquittal is a bar to this suit. We are of opinion that it is."

If the same things could be said in this case with reference to the criminal prosecution, then our conclusions would be the same as reached by the court in that case. Again, further on in the opinion, it is said:

"The judgment of acquittal in the criminal proceeding ascertained that the facts which were the basis of that proceeding, and are the basis of this one, and which are made by the statute the foundation of any punishment, personal or pecuniary, did not exist. This was ascertained once for all, between the United States and the claimant, in the criminal proceeding, so that the facts cannot be again litigated between them, as the basis of any statutory punishment denounced as a consequence of the existence of the facts."

That case came clearly within the rules and principles announced in the Duchess of Kingston Case, 20 How. St. Tr. 355, which, as before stated, is the settled law everywhere recognized and followed. We are of opinion that the rulings of the court, under review, were correct.

2. The next question relied upon for a reversal of this case is more technical than sound. The two cases were consolidated. The authority of the court to order them to be tried together is not denied. The right to do this when the cases involve substantially the same issues, and delay and expense would thereby be avoided, is unquestioned. Insurance Co. v. Hillmon, 145 U. S. 293, 12 Sup. Ct. 909, and authorities there cited. No objection is urged on that account, but it is claimed that the court erred in refusing to allow the defendants in the other case to peremptorily challenge a juror, and that defendant is entitled to avail himself of that error in the present case. The facts are that the defendant in this case had exercised three peremptory challenges, which were all that he was entitled to; "that thereupon the defendants Stone and Noonan peremptorily challenged John Giffin, one of the jurors, upon the ground that the defendants were entitled to challenge peremptorily, in each of the cases on trial, three jurors, and that they desired to exercise said challenge upon said juror in the said cause, No. 89, on behalf of said defendants." Conceding that under the principles announced in Insurance Co. v. Hillmon, supra, the two causes of action remained distinct, and required separate verdicts and judgments, and that no defendant in either case could be deprived, without his consent, of any right material to his defense, whether by way of challenge of jurors or of objection to evidence, to which he would have been entitled if the two actions had been tried separately, it does not necessarily follow, as claimed by counsel, that the defendant in this case was prejudiced by the ruling of the court in the other cause. How could the defendant have been injured by such ruling? The two cases, although consolidated, were separate and distinct. Defendant had exercised all the rights and privileges he was entitled to in this case. If the case had been tried by itself, he could not have claimed but three peremptory challenges. He was not entitled to any more by reason of the consolidation. It is true that the defendants in the other case were entitled to three additional peremptory challenges, and that if that privilege had been granted to them the result might

have been that this defendant would have had the benefit of six challenges; but that result would follow by the circumstance of the consolidation, and the fact that he was a party defendant in both actions, instead of by virtue of any legal rights given to him by the law as a defendant in this action. He had exhausted his rights in this case, and he should not be permitted to complain because the court committed an error in the other case which did not deprive him of any substantial right, under the law, as a defendant in this action.

3. It is claimed that the court erred in excluding from the jury, as evidence, the appointment of defendant as the agent of the Central Washington Railroad Company and of the Spokane and Palouse Railway Company, (1) because said corporations having been organized under the laws of the territory of Washington, and having filed their articles of incorporation and proofs of organization with the department of the interior, which had approved the same, were authorized by the laws of the United States to take the timber included in this action, and such taking by them through their agent was not unlawful, and the proof shows that the ties which are sued for were used by the said railroad companies in the construction of their roads; (2) for the further reason that, if said railroad ties were cut and taken by defendant in the honest belief that the cutting and taking were authorized by law, the measure of damages would be different from other unlawful taking.

It appears from the record that the Spokane & Palouse Railroad commenced at Marshall Junction, on the line of the Northern Pacific Railroad, and ran from that point in a southwest direction; that the Central Washington Railroad commenced at Cheney, about eight miles west of Marshall Junction, on the line of the Northern Pacific, and ran therefrom in a northwesterly direction; that no timber fit for ties was found along the line of either of these roads; that both of them penetrated a barren region, almost entirely destitute of timber; that the timber was cut from lands along the line of the Northern Pacific, about 50 miles distant from the eastern end of the other roads, which was the nearest point where available timber could be found. The question whether the court erred in excluding the testimony is to be determined by an interpretation of the act of March 3, 1875, which grants to railroad companies the right of way through the public lands of the United States; "also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad." 18 Stat. 482. If the timber taken was not "adjacent to the line" of the railroads in question, then the fact whether defendant was the agent of the railroad companies was wholly immaterial and irrelevant. Upon this subject the court charged the jury as follows:

"The act of congress under which this claim is made does not undertake to provide the materials necessary for the building of railroads. It does not provide that if there is not any timber convenient, or within a convenient distance to the building and construction of a new railroad, that the railroad company has a right to require the United States to provide them with ma-

terial, or go upon distant lands and procure the material that they require. That is not the scope of the law, and so I have decided that 'adjacent lands' means lands in proximity, contiguous to or near to the road, and that lands so far ·distant from the railroad, and mentioned as the lands in Kootenai county, Idaho, where it is claimed that railroad ties were cut, were not 'adjacent lands,' within the meaning of the law."

Some differences of opinion have been expressed by the courts as to the true purpose, intent, and object, and proper construction, of this act. Judge Hallett, in U. S. v. Denver & R. G. Ry. Co., 31 Fed. 886, held that the language of the act was intended to indicate such timber and other materials as could be conveniently reached by ordinary transportation by wagons. Judge Deady, in U. S. v. Chaplin, 31 Fed. 890, declared that land is adjacent to the line of the road, within the purpose and intent of the act, when, by reason of its proximity thereto, it is directly and materially benefited by the construction of the railroad. While Judge Knowles, in U. S. v. Lynde, 47 Fed. 300, expressed the opinion that it was° left in doubt as to what should be considered adjacent land to the line of the road, and came to the conclusion "that it must be determined by the evidence in the case." In Denver & R. G. R. Co. v. U. S., 34 Fed. 841, certain views were expressed upon this subject, directly applicable to the facts of this case, which we consider sound and just. It was there stipulated that the lands from which the timber was cut were adjacent to the line of railway, and Judge Brewer, for this reason, said, "I shall not stop to consider how near land must be to be adjacent,—whether half a mile or ten miles." But he immediately added his individual views, as follows:

"I certainly do not agree with the idea, which seems to be expressed elsewhere, that the proximity of the lands is immaterial, or that congress intended to grant anything like a general right to take timber from public land where it was most·convenient [which is the direct contention of defendant in this case]. The grant was limited to adjacent lands, and I do not appreciate the logic which concludes that, if there be no timber on adjacent lands, the grant reaches out, and justifies the taking of timber from distant lands,—lands fifty or a hundred miles away."

The case was taken to the supreme court of the United States, and there affirmed. U. S. v. Denver & R. G. R. Co., 150 U. S. 11, 14 Sup. Ct. 11. But, under the stipulation, this question was not there passed upon. We are of opinion that, under the facts presented in this case, it could not fairly be said, under any reasonable construction of the language of the act, that the timber was taken from lands "adjacent to the line" of either of the roads in the construction of which it was used; that the court did not err in excluding the evidence of defendant's agency; and that the charge of the court, withdrawing this question from the jury, was not erroneous.

4. To further sustain his defense, the defendant relied upon the fact that he had bought a portion of the timber from certain parties who had settled upon the public lands, and filed their declaration as settlers in the land office. It is contended that the court erred in permitting the attorney for plaintiffs to cross-examine the defendant and other witnesses as to whether some or all of the claimants to these lands had continued to reside upon the lands

since the timber was cut; that the court erred in giving certain instructions to the jury relative to the rights of such claimants, and in refusing to give instructions which were asked by the defendant, to the effect that, (10) when a pre-emption or homestead filing has been made by a settler, the effect of such action, combined with an actual settlement on the public land, is to sever the land from the public domain, and, subject only to the loss by the claimant of his rights by failure to comply with the subsequent conditions of the land, the settler becomes the owner of the land, and, except as between him and the government, he is entitled to exercise all the rights of the owner; (11) that the legal presumption arising from the lawful entry made upon land by a claim under the law, as a homestead or pre-emption, and occupation as such, is that the claimants acted in good faith, and the burden of proving bad faith and attempting to defraud the government is upon the plaintiff; (12) that if the jury should find that the claimants of the land, who sold timber cut from the land to defendant, were at the time residing upon it, having claimed it under the homestead and pre-emption laws, and were so improving their land as to indicate to the jury that they intended to acquire title by compliance with the law, and that the sale of the timber was made under such circumstances as to lead the purchaser to believe that the parties selling it were acting in good faith, then such sale was lawful, and the plaintiffs would not be entitled to recover anything for the timber so sold. The court, after clearly and correctly stating the issues which were involved in the suit, and announcing the principles of law which govern the right of property in public lands, and the manner in which settlers upon the public lands could acquire title thereto, and their rights in the premises, to which no exceptions were taken, charged the jury as follows:

"A settler who takes up a claim on public lands, intending to perfect his right to it, until he has perfected his right, has no right to cut the timber, except so far as it is necessary and reasonable to prepare so much of the lands for cultivation as he intends to cultivate. A man of limited means, who goes upon a claim, and is able, during the first year, to cultivate only a few acres, is only authorized to cut the timber off the few acres that he intends to cultivate and is able to cultivate. If he cuts down the timber off forty acres, it should be in pursuance to a definite plan that the plow shall follow the ax, and that the entire forty acres shall be put to use for the purpose of cultivation, or in such manner as a farmer makes use of land that is tillable land. The balance of the timber on the 160 acres, if it is a timbered claim (a claim covered with timber), should remain as a preserve (a timber preserve) for the future benefit of the land, and should be removed only so fast as the settler finds it necessary to remove it in order to put in cultivation the lands he means to cultivate and intends to cultivate in good faith. But a man whose primary purpose is to cut the timber on a piece of land is no more authorized to go and cut that timber, by reason of his having filed in the land office a declaration of his intention to take the land under the pre-emption law, than if he goes and cuts it without filing any declaration. Unless the declaration is an honest declaration, and is supported by compliance with the requirements of the law, by making a home upon the land, actually living upon it, and actually proceeding in the regular way by regular process of improving the land and putting it in cultivation, and until he has perfected his right by full compliance with the law, he has no right to cut down and sell the timber on other portions of the land, which he is not intending to immediately put into cultivation."

This portion of the charge must be considered in the light of the fact that the court had, at great length, correctly charged the jury as to the rights of bona fide settlers upon the public lands, and that, under the peculiar facts of this case, it became the duty of the court to charge the jury as to the limitations and exceptions to certain general rules he had enunciated, and to submit to the jury the question whether the persons from whom defendant had purchased the timber were actual settlers in good faith, and whether they had, under the pre-emption or homestead laws, acquired any right to the lands. The testimony was to the effect that the settlements had been made upon lands that were not well adapted for cultivation; that the improvements which had been made were very slight, consisting only of small cabins; that there was no such clearing of the land as to indicate that the timber had been cut and removed for the purpose of cultivating the soil; that the cutting of the timber had been done indiscriminately all over the claim; that the limbs and brush and tops of the trees had been left upon the ground; that the parties who had filed their declarations of settlement, after cutting and selling the timber off the land, had departed therefrom, etc. It is conceded by the defendant that all the testimony which tended to establish fraud and bad faith of these settlers was admissible in evidence. It would have been error to exclude any testimony which tended to establish such facts. U. S. v. Steenerson, 1 C. C. A. 552, 50 Fed. 504, and authorities there cited. The charge of the court, under consideration, was applicable to the facts of the case, and, in our opinion, correctly stated the principles of law that applied to such facts. U. S. v. Cook, 19 Wall. 591; U. S. v. Williams, 18 Fed. 475; U. S. v. Ball, 31 Fed. 668. The instruction 10, drawn by defendant, was erroneous in this: that it proceeded upon the assumption that the settler acquires title, and "all the rights of ownership," by the mere fact of the filing of his declaration and making settlement. This is not the law. U. S. v. Ball, supra; Schoofield v. Houle (Colo. Sup.) 22 Pac. 781; Thrift v. Delaney, 69 Cal. 193, 10 Pac. 475, and authorities there cited. The court did not err in refusing to give the instruction asked by defendant, that "the burden of proving bad faith and attempting to defraud the government is upon the plaintiffs." This was not an issue raised or presented by the plaintiffs as part of their case. The issue as to the good faith of the settlers from whom the defendant bought timber was presented by the defendant as a defense. The court correctly charged the jury that:

"The party who alleges the fact, and undertakes to establish the case by reason of certain facts which he says exist, has resting upon him the burden of proof; and he is required to establish what he alleges by evidence sufficient to outweigh all the evidence to the contrary, and unless there is a fair preponderance in his favor the jury should render a verdict against him."

The other instruction (12) asked by defendant was calculated to mislead the jurors in this: that it withdrew from their consideration the facts that the claimants of the land from whom defendant bought timber abandoned the land after cutting the timber, and

left the question of their good faith upon the fact of their actual residence at the time the timber was cut.    But it is a complete answer to this—as well as the last—instruction to say that the charge of the court, to which no specific objection was taken, covered all the material questions involved in these instructions.    The court, among other things, charged the jury that:

"As between the government and the settler, the title to the land, until the conditions of the law are fulfilled, remains in the United States, but in the meantime, if the settler is engaged in improving the land as required by law, and disposes of any surplus timber without intent to defraud the government, and the purchaser buys the timber under the belief that there is no intent or purpose to defraud the government, the sale is lawful, and the purchaser is protected.    The fact that claimants to lands under the homestead and pre-emption laws, after occupation, for a time abandon the lands, is not, alone, proof that they intend to defraud the government, although in the meantime they have cut and sold the timber from the lands during the occupation; but the jury should judge of the intent of the parties so acting by all the circumstances surrounding each case, and if these circumstances satisfy the jury that the claimants to the land were acting in good faith at the time they sold the timber, and the purchaser had no reasonable grounds to believe otherwise, then such sale would be lawful."

5. We decline to review any assignment of error based upon any portion of the charge or instructions of the court, wherein the record fails to show affirmatively that timely exceptions were taken thereto "while the jury was at the bar."    Phelps v. Mayer, 15 How. 160; U. S. v. Breitling, 20 How. 252; French v. Edwards, 13 Wall. 506; Stanton v. Embrey, 93 U. S. 548; U. S. v. Carey, 110 U. S. 51, 3 Sup. Ct. 424; Hunnicutt v. Peyton, 102 U. S. 333.

6. It is claimed that "the court erred in giving any instructions to the jury on Sunday."    It is doubtful if this alleged error is presented in such a manner as to require this court to pass upon it.    The record shows that the jury retired on Saturday to deliberate upon their verdict; that on the following day .(Sunday) the jury were brought into court, upon the court's own motion (counsel for both parties being present), and asked if they had agreed upon a verdict; that the reply was in the negative; that the judge remarked that he hoped the jury would be able to agree, and stated that he desired the jury to answer some questions in the nature of special findings.    These questions were:

(1) "Did the defendant, Stone, receive any saw logs which had been unlawfully taken from any part of the lands specified in the complaint?"    (2) "What sum does the jury award as damages on account of saw logs?"    (3) "Did the defendant, Stone, receive any ties which had been unlawfully taken from any part of the lands specified in the complaint?"

The court informed the jury that the answers to these questions should be given in accordance with previous instructions about the measure of damages, and that the questions were submitted "in the same way that the whole case was submitted to you, to be answered if you can."    Thereupon, the attorney for the United States requested the court to explain to the jury certain matters as to the ties and saw logs, which the court declined to do, but stated that the jury had been specifically instructed upon these subjects, and he declined to instruct them further, and said that

he desired an answer to the special questions "for the use of the government in other litigation." The jury retired, and thereafter, on the same day, came into court, and rendered a general verdict against the defendant, and also answered the special questions submitted by the court, and were then discharged. On Monday, at the opening of court, counsel for defendant stated that he would like to have an exception entered "to the jury having been sent out on Sunday, and to the receiving of the verdict on Sunday." The court stated that a bill of exceptions would be signed, which recites "the exact facts as they occurred." From this statement it appears that no exceptions were taken on Sunday to any of the transactions that occurred on that day. It is questionable if the proceedings which took place could be fairly classed as instructions to the jury, but if they could be so considered, and the court had any power to give instructions on Sunday, it was the duty of the defendant to have then and there excepted, if he had any objections thereto. It is evident that the defendant was not prejudiced by any thing that transpired in court on that day. All that was said had reference to the finding of a special verdict, which could not have affected the result as to the general verdict. The remark of the court that the answers were required for use in other cases might very properly have been omitted, but we are unable to see how it could have had any tendency to influence the jury against the defendant. The whole case was fairly and impartially submitted by the court in its general charge given to the jury on the day before, and the court, on Sunday, declined to give any further instructions, and informed the jury that the answers to the special questions should be given in accordance with the previous instructions. It was left optional with the jury to answer these questions, although the court requested them to do so if they could.

There is no statute in the state of Washington, as in most of the other states, which authorizes the courts to receive a verdict on Sunday, and it is for this reason claimed that all the proceedings on Sunday were void. It is true that, by the common law, Sunday is dies non juridicus, and that all judicial proceedings which take place on that day are void. It is certain that under the rules of the common law no trial could be had or judgment rendered on Sunday. White v. Pergue, 15 Nev. 146; Pearce v. Atwood, 13 Mass. 347; Chapman v. State, 5 Blackf. 111; Freem. Judgm. § 138, and authorities there cited. But no trial was had nor any judgment rendered in this case on Sunday. Did the court have any authority to receive the verdict on Sunday? We are of opinion that this question must be answered in the affirmative, whether it is authorized by statute or not, upon the authority of Ball v. U. S., 140 U. S. 131, 11 Sup. Ct. 761. In that case the supreme court said:

"On Sunday, the third of November, the record shows the return of the verdict, finding 'the defendants J. C. Ball & R. E. Boutwell guilty as charged ir this indictment, and we find M. Filmore Ball not guilty,' which is followed by these words: 'It is therefore considered by the court that the defendants

J. C. Ball and R. E. Boutwell are guilty as charged in the indictment herein, and as found by the jury; and it is ordered that they be remanded to the custody of the marshal, and be by him committed to the county jail of Lamar county to await the judgment and sentence of the court. It is further ordered that the defendant M. F. Ball be discharged, and go hence without day.' If this could be regarded as the judgment of the court, it was void because entered on Sunday. Mackalley's Case, 9 Coke, 61b; Swann v. Broome, 3 Burrows, 1595; Baxter v. People, 3 Gilman, 368; Chapman v. State, 5 Blackf. 111. But it is clear that it cannot be treated as a judgment, and is in effect nothing more than a remand for sentence."

The judgment of the circuit court is affirmed, with costs.