[No. —. March 1, 1897.]

## UNITED STATES OF AMERICA, Appellee, v. SAMUEL L. BACHELDOR, Appellant.

PUBLIC LANDS—CUTTING TIMBER FOR RAILROAD—STATUTORY CONSTRUCTION.—The term "adjacent," within the meaning of the act of congress allowing the Denver and Rio Grande Railroad to take timber for construction from public lands adjacent to the right of way, does not apply to lands lying beyond the tier of townships adjoining those through which the right of way of the road extends.

*Appeal* from a judgment of the First Judicial District Court, convicting defendant of unlawfully cutting timber on public lands. Affirmed; Hamilton, J., dissenting.

The facts are stated in the opinion of the court.

CHARLES A. SPEISS for appellant.

A. A. JONES for appellee.

BANTZ, J.—The defendant, Bacheldor, was indicted, tried and convicted in the First judicial district court, under section 2461, Rev. Stat. U. S., for unlawfully cutting timber upon public lands. The defendant admitted the cutting, but justified it under an act of congress granting to the Denver & Rio Grande Railroad Company a right of way, and the right

to take from the public lands adjacent thereto stones, earth, water, and other materials required for the construction, etc., of the railway. The question arises as to the meaning of the word "adjacent" in this act. The timber was cut some twenty or twenty-four miles in a direct line from the right of way. The distance by wagon road was much further. The court below charged the jury that the word "adjacent," as used and applied in the act of congress, meant and extended to the tier of townships lying adjoining on either side of the townships upon, through, and over which the line and right of way of the railroad runs.

The question as to the intent of congress employing the word "adjacent" in the act has been before the courts a number of times, but there has been a marked disinclination to define its meaning with exactness, and there has been quite a difference of opinion expressed. See U. S. v. Denver & R. G. R. Co., 31 Fed. Rep. 889, per Judge Hallett; same case, as appealed, 34 Fed. Rep. 841, per Justice Brewer; U. S. v. Chaplin, 31 Fed. Rep. 890, per Judge Deady; U. S. v. Lynde, 47 Fed. Rep. 297, per Judge Knowles; U. S. v. Railroad Co., 29 Alb. Law Journal 24; 1 Am. and Eng. Ency. Law [2 Ed.] 634; Secretary Teller to the Commissioner of General Land Office, 1 Land Dec. Dep. Int. 610; Stone v. U. S., 64 Fed. Rep. 673; Secretary Vilas to the Attorney General, 8 Land Dec. Dep. Int. 41; U. S. v. Denver & R. G. R. Co., 150 U. S. 1. It is manifest that what would be adjacent under some circumstances would not be under others. The condition of the country through which the right of way extends should be considered. But still the mere poverty in building materials of the county in the immediate neighborhood of the right of way would not be sufficient to extend the meaning of "adjacent" to reach remote lands from which such materials may be supplied. The lands from which such materials are taken must at least lie near, the term "adjacent" being in this connection relative. The condition of the country can not make lands adjacent which are not; but the statute should receive such a liberal construction as will carry out

the objects intended.  Perhaps the safer course in ascertaining the meaning of such terms is in the process of exclusion and inclusion, a method which has accomplished so much for our common law.  It is safer to say what in a given case is excluded from the meaning of adjacent than to say what under all circumstances it includes.  We need not determine whether in all cases timber may be taken from the public lands under such license, so far as the outer lines of the townships adjoining those through which the road runs; but it must be recognized that lands are not adjacent which lie beyond the tier of townships adjoining those through which the right of way runs, as in the case at bar.  The township is the largest subdivision of land designated in the government survey; and, in laying down this limit, we can not say that the court below committed error.  The judgment will therefore be affirmed.

Smith, C. J., and Collier, J., concur.

HAMILTON, J. (dissenting).—I can not concur in the conclusion reached by a majority of the court in this case, in affirming the judgment, in sustaining an instruction wherein the court below sought to determine, as a matter of law, what lands shall be included in the term "adjacent."  The act of congress granted the right of way through the public lands to the Denver & Rio Grande Railroad Company, its successors and assigns, granting the right of way over the public domain, 100 feet in width on each side of the track, and also granted the right to take, from the public lands adjacent thereto, stone, timber, earth, and other material required for the construction and repair of the railway and telegraph lines.  The court below, in charging the jury as to the law, declared that the term "adjacent," as used and applied in the act of congress, means the tier of townships lying adjacent on either side of the township upon, through, or over which the line or right of way of the Denver & Rio Grande Railroad runs, and held as a matter of law, that, unless the timber so taken was taken

within that boundary, that is, within the boundary around the township adjoining the township through which the road ran, that the defendant could not justify himself on the ground of a license.

The determination of the cause turns upon the construction to be given to the word "adjacent" as used in the charter of the company.    What could have been the intent and meaning of congress in the employment of the word "adjacent" as to the use of building material for the construction of the road along its line?    Congress has not attempted to give construction to this term, as it has been used in this or other similar charters; nor has it attempted to define the boundary line between the land which should be included and that which should be excluded within the term "adjacent to the line of the road."    It is therefore left to the courts to look to this class of legislation, and consider the condition of the country at the time of its adoption, the object sought to be accomplished, and the means intended to be employed to the attainment of the end sought, and from these, if we can, give this term that just and fair construction which will carry out the intent and purpose of the government in the adoption of this class of legislation.    The government, as the original owner of this vast domain of country between the Missouri and the Pacific coast, sought to adopt measures which would lead to the opening, settlement, and development of this vast unoccupied area; and, as a means to the attainment of this end, it adopted the policy of extending its aid to the construction of internal improvements, and granted title to its lands, and ceded to the promoters of these vast enterprises lands, timber, and other material to aid in the construction of these railroads.    Some of these roads were to be built hundreds of miles across barren wastes and mountainous countries, where little or no timber or material could be obtained immediately adjoining the roads to aid in their construction.    The government said to the promoters of these enterprises:    "We will give you a grant of the right of way over our domain and lands, to aid you in these enterprises, and, in addition, we will

allow you to enter upon and take from our land adjacent to your road timber and other material to aid in its construction." The Denver & Rio Grande Railroad Company, the appellee herein, was one of the beneficiaries of this governmental policy, and was granted in its charter the privilege of taking from the public lands lying adjacent to the line of its road timber, stone, and other materials to aid in the construction and completion of its road.

Looking, therefore, to the country at the time of the adoption of this legislation, and the purposes intended to be accomplished by the act, it is clear, we think, that a liberal construction should be given to this clause of the act, in favor of the grantees and as against the government. This, as we understand, has been the construction placed upon this class of legislation by the courts of the country. In the case of U. S. v. Denver & R. G. R. Co., 150 U. S. 14, Justice Jackson, in rendering the opinion of the court, uses this language: "Looking to the condition of the country, and the purposes intended to be accomplished by the act, this language of the court furnishes the proper rule of construction of the act of 1875. When an act, operating as a general law, and manifesting clearly the intention of congress to secure public advantages, or to subserve the public interests and welfare by means of benefits more or less valuable, offers to individuals or to corporations as an inducement to undertake and accomplish great and expensive enterprises or works of quasi public character in or through an immense and undeveloped public domain, such legislation stands upon a somewhat different footing from merely a private grant, and should receive at the hands of the court a more liberal construction in favor of the purposes for which it was enacted." It is also stated by the court in the same opinion that, while public grants are construed strictly as against the grantees, yet they are not to be so construed as to defeat the intent of the legislature, or to withhold what is given either expressly or by necessary or fair implication. In the case of Winona & St. Peters Railway Co. v. Barney, 113 U. S., Justice Field, speaking for the

court, says: "The act making the grants * * * are to receive such a construction as will carry out the intent of congress, however difficult it might be to give full effect to the language used if the grants were by instrument or of private conveyance. To ascertain that intent, we must look to the condition of the country when the acts were passed, as well as to the purposes declared on their face, and read all parts of them together." And also in the case of U. S. v. Denver & R. G. R. Co., 31 Fed. Rep. 889, Judge Hallett says: "It seems unreasonable to say that in this connection the word refers to the government subdivision lying next to the right of way; and, if we should so declare, it would be difficult to point out what subdivisions are meant. Accepting the larger meaning of the word, the right to take timber from the public lands under these acts extends naturally some distance from the right of way, and probably within ordinary transportation by wagon." And also in the case of U. S. v. Lynde, 47 Fed. 297, Judge Knowles observes. "Considering these cases, it is evident that the adjacent land named in the charter of the Northern Pacific Railroad Company was not intended to be land contiguous to or adjoining the line of its railroad. * * * We are led to the conclusion that it must be determined by the evidence in the case." In the case of U. S. v. Northern Pac. R. Co., 29 Alb. Law J., 1 Am. and Eng. Ency. Law, the court uses this language: "Was the land in question in the neighborhood of defendant's line of road, within the meaning of section 2? The design of this question was to allow the company to take timber from public lands to build its road, and when we once concede that under this section the defendant is authorized to go beyond adjoining lands, as the use of the word 'adjacent' compels us to do, it must follow that the use of the more enlarged word was for the benefit of the Northern Pacific Railroad Company, and it must be so construed by the court as to effect the object of its enactment. And we are of opinion that timber land nearest to the line of the road must be held to be neighboring timber land, even although there may intervene large tracts of land not timbered. If this be

so, then, under the facts of these cases, as above stated, the lands from which the timber in question was cut were in the neighborhood of the line of the road where it was used, and therefore 'adjacent' thereto, within the meaning of section 2 of the charter of the defendant Northern Pacific Railroad Company. Besides, under the facts proven in these cases, the lands in question would probably come within a more restricted use of the word 'adjacent,' for the line of defendant's road runs for several hundred miles through a country almost entirely destitute of timber, and the belt upon which this timber in question was cut was the first timber land near said road reached by it in the course of its construction. Therefore, though this timber be more than one hundred miles from the line of defendant's road, we are of the opinion that it must, under the circumstances, be held to be 'adjacent' thereto."

From these authorities it is clear that a liberal construction should be given to the word "adjacent" in favor of the grantee to aid in the construction of its road. As to whether any particular land or the land in controversy in this case is adjacent to the line, so as to authorize the company to take the timber therefrom to aid in the construction of its road, is not a question entirely of law, to be arbitrarily determined by the court, but is a question of mixed law and fact, which should be determined by the jury under proper instructions given by the court. As is correctly stated, each case must stand upon its own facts. What may be adjacent in one case might not be so regarded in another. The barrenness of the land through which the road runs, and its poverty of building materials, is a controlling reason, which must enter into the determination as to whether the land is or is not adjacent. If timber could be obtained from land a mile from the track, in abundant quantities to meet the demands of the road, the company would not be permitted to go ten miles from the road, and cut timber which could be obtained within one mile for the use for which it was intended. On the other hand, if the land lying within the first ten or twelve mile along and immediately adjoining the road is entirely barren of timber, and

destitute of material which could be used in its construction,
but immediately outside of these limits, say, within thirteen
miles, an abundance of timber and material can be obtained,
then the court has no right to say, as a matter of law, that this
timber and material are not adjacent. The position assumed
by the court in this case is that the court shall say whether the
land is or is not adjacent, and shall fix judicially a line across
which the company will not be permitted to go in the selection
of material to aid in the construction of its road. In other
words, if the position assumed by a majority of the court is
true, then it might occur that this railroad is constructed
through a section of country where, for hundreds of miles
along its track, there would not be a stick of available timber
on the section adjacent to the section through which the road
is built which could be used in its construction; and yet just
over this line, within a few hundred feet of it, there might be
a vast unbroken forest stretching for miles along the track
from which timber could be had, but which could not be
touched by the company, because it is ten feet over the line
arbitrarily fixed by the court. Can it be contended that the
railroad company is to be confined to that particular limit,
within twelve miles, at the very furthest from its line? That
there might also exist immediately outside of this boundary
a vast domain covered with timber, yet the company would
not be permitted to take from it one stick to use in the build-
ing of its line? Such a view is against the spirit and meaning
of the law, and could not have been the intent of the gov-
ernment in granting this charter. Was it the intention of
congress, in the adoption of this legislation, to extend a liberal
policy in the encouragement of these internal improvements?
If so, its language should not be given that narrow and re-
stricted meaning which will defeat the end sought to be accom-
plished by the act. In my judgment, the conclusion reached
by the court in this case can but lead to the latter result. I
am therefore of the opinion that the construction given by
the court to the term "adjacent," fixing thereby the limit
beyond which the company could not take the timber at a

distance of six miles outside of the township through which the road runs, is a construction too narrow and restricted, and confines the company to a limit not justified either by the letter or spirit of the act.   I therefore feel it my duty to dissent from the opinion reached by a majority of the court in this case. .