UNITED STATES *v.* DENVER & R. G. RY. CO.

SAME *v.* DENVER & R. G. R. CO. and others.

*(District Court, D. Colorado.	August 27, 1887.)*

1. PUBLIC LANDS—GRANT OF MATERIALS TO RAILROAD COMPANIES.
    Defendant, a railroad company, was empowered by special act of congress to take timber from the public lands adjacent to its right of way, for the repair and construction of its road, with the proviso that the road should be built to a certain point within a certain time.  Defendant, having forfeited its rights under the special act, continued to take timber; and, upon being sued by the government for the value of the timber taken after such forfeiture, justified its action under the provision of a subsequent general act of congress giving railroad companies generally a right of way over public lands, and the privilege of taking material therefrom for the construction of their roads.  *Held,* that the two acts were not inconsistent, and that the defendant, having enjoyed the bounty of the special act. was not thereby disqualified from claiming the privileges granted by the general law.

2. SAME—ADJACENT PUBLIC LANDS.
    Under the provisions of the special act of congress of June 8, 1872, (17 St. 339,) and of the general act March 3, 1875, the defendant railroad company was authorized to take from the public lands "adjacent" to the line of its road the timber and other material necessary for the construction and repair of its railway.  *Held,* that the language used was intended to indicate such timber and other materials as could be conveniently reached by ordinary transportation·by wagons, and that the privilege granted did not include the right to take timber from public lands, and transport it by rail to distant parts of the road, for use in construction and repairs.

3. SAME—ACTION OF TRESPASS—BURDEN OF PROOF.
    In an action of trespass by the government against a railroad company, for cutting timber upon public lands, the burden is upon the government to show that the timber was taken from public lands.  That it was taken from public lands "adjacent" to defendant's road, and used at a point authorized by the statute granting the privilege of taking it, is a matter of defense peculiarly within the knowledge of defendant, and, in the absence of evidence to that effect, plaintiff is entitled to judgment.

*H. W. Hobson,* for plaintiff.
*Edward O. Walcott,* for defendant.

HALLETT, J.	In these actions the government sues for the value of · timber taken from public lands, and defendants justify the taking under certain acts of congress.	The facts as to the alleged trespasses are not in dispute; the matter for consideration is the proper construction of the acts of congress.	In the year 1870, defendant in the first suit, the Denver & Rio Grande Railway Company, was incorporated under a general law of the territory of Colorado relating to corporations, and afterwards built the road and operated it until some time in the year 1886, when the property was sold under foreclosure proceedings to a new company, defendant in the second suit, and the present owner.	In this discussion the old company will be called the *railway* company, and the new company the *railroad* company, as their names differ only in these words.

June 8, 1872, congress granted to the railway company "the right of

way over the public domain   *   *   *   and the right to take from the public lands adjacent thereto stone, timber, earth, water, and other material required for the construction and repair of its railway and telegraph line." The act is one section, and subject to a proviso:

"That said company shall complete its railway to a point on the Rio Grande as far south as Santa Fe within five years of the passage of this act, and shall complete fifty miles additional south of said point in each year thereafter, and in default thereof the rights and privileges herein granted shall be rendered null and void as far as respects the unfinished portion of said road." 17 St. 339.

By act of March 3, 1877, (19 St. 405,) the term mentioned in the proviso was extended to 10 years. The road was not completed to a point on the Rio Grande as far south as Santa Fe within the 10 years limited by the act, and it may be assumed that, except as to the road built within that time, the grant came to an end June 8, 1882. On behalf of the railway company, it was suggested in argument that the proviso quoted above relates only to the next antecedent, a clause conferring on the company the right to condemn lands in a manner specified in an earlier act of congress; but it is not necessary to waste time on that point. The proviso was inserted to enforce diligence on the part of the company, and its meaning is not doubtful. The trespasses alleged in each of these actions occurred after June 8, 1882, and, except in so far as the timber taken was used in repairing the road built before that date, the act of June 8, 1872, can have no application or effect. And as to timber so used for repairs, we shall presently consider whether it was taken from lands adjacent to the right of way, within the meaning of the act of 1872.

In general, the trespasses complained of are justified under another act of congress approved March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States," (18 St. 482.) By this act the right of way through the public lands, and the right to take timber and other material from lands adjacent, is granted "to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of 100 feet on each side of the central line of said road; also the right to take from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad." As to the right of way over public lands, and the right to take timber and other material from adjacent lands for constructing the road, the act is substantially the same as the act of 1872.

On behalf of the government it is contended that defendants, having enjoyed the bounty of a special act for the time limited therein, can claim nothing under the general law. The argument is that by the act of 1872 congress gave to the railway company all that was asked for or intended to be given; and to allow more under a later act is to disregard

the limitation of the first act. This view, however, is not in accord with the language of the act and the circumstances attending its passage. Numerous grants of similar character had been made to many different companies, and to some of them large tracts of public land had been given. Congress was much beset by other companies for like favors, and it is reasonable to believe that the act of 1875 was intended to take the place of special acts like that of 1872, which were then common in the legislation of congress. In this view the act of 1875 is not inconsistent with earlier acts on the same subject, but supplemental, limiting or extending the earlier acts, according to its terms. In *Railway Co.* v. *Alling*, 99 U. S. 463, it was so applied to the act of 1872, and they were allowed to stand together.

So, also, the language of the act, in general, confers the privileges therein mentioned upon all companies who may wish to build on the public lands, not excluding any. It seems to be broad enough to embrace companies which have enjoyed the privileges of other acts, and in respect to new lines constructed by such companies equally with others which have not been so favored. If, however, the right of the railway company and of the railroad company as its successor in interest to take timber from public lands under the acts of 1872 and 1875 be recognized, a more difficult question is presented as to what are adjacent lands within the meaning of these acts.

The parties agree in each case that the timber was cut from lands adjacent to the line of railway, as it was then or afterwards constructed, and have been careful to state whether the timber was taken from lands adjacent to the line built before or after June 8, 1882. The timber in controversy in the first suit was cut from lands near the town of Montrose, in Montrose county, between October 1, 1882, and November 1, 1883. Some of it was taken to Utah territory for the use of the Denver & Rio Grande Western Company, and a small quantity was used in building cars. The remainder was appropriated to bridges, buildings, and other permanent structures on the road, but the location of such a structure with reference to the place from which the timber was taken is not stated. The second action is for timber cut in Gunnison county between January 1 and November 1, 1886. It was made into ties, one-fourth of which have been used for repairs on lines built prior to June 8, 1882, one-fourth for new switches and side tracks along the line of road completed subsequent to June 8, 1882, and one-half for a new line now in process of construction between Montrose and Ouray.

As in the other case, it appears that a considerable part has been carried to a place remote from the place of cutting, and the location of the remainder with reference to the place of cutting is not stated. Obviously the questions of fact were prepared with a view to present the question concerning the right of defendant to take timber from public lands under the act of 1875, which has been sufficiently discussed in this opinion; and, whether the timber was taken under the act of 1872 or that of 1875, the same question is presented as to the right of the company to use it anywhere on its line; in other words, whether the timber must be used

on a place adjacent to that from which it was taken, or may be used in any place to which the company can carry it.

Nothing has been said in defense of the railway company's act in taking timber from lands adjacent to its line for the use of another company in the territory of Utah, and it may be assumed that nothing will be attempted in that direction. And the question whether under the act of 1875 timber could be taken for use on the road built under the prior act of 1872, and whether under the act of 1875 timber could be taken from lands adjacent to the road built, under the prior act, is subordinate to that last stated, and which is now to be considered. If, as claimed by defendants, all timber on public lands adjacent to the line of road may be used on any part of the line, it is plain that the grant is of all the timber so situated; for with lines extending through mountains scantily furnished with timber, and plains with none whatever, it is obvious that the company will have use for all on any part of its lines. As defined in its certificate of organization, the lines of the Denver & Rio Grande Railway Company were more than 2,500 miles in length, of which perhaps one-half were in regions destitute of timber. Something over 1,200 miles of these lines have been built. If all the timber which can be said to be adjacent to the lines so constructed is subject to appropriation throughout their entire length not much remains for other uses. With us, and perhaps generally elsewhere, railroad corporations may be organized under general laws without limit as to number or length of road; and, as we have seen, all of them can take, from public lands, timber for building their roads, according to the act of 1875. Under the construction given to that act by defendants, the time is not distant, perhaps it is at hand, when all accessible timber in the state would be subject to appropriation by these corporations.

The word "adjacent" seems to be of flexible meaning, and to depend very much upon the context and the subject-matter to which it may be applied for its proper effect. As used in these acts, and with reference to the lands which may be taken for stations, side tracks, etc., it has the sense of contiguous or adjoining, while in the preceding paragraph, and with reference to material for building the road, it is claimed, and with reason, that it should have the larger sense of nearness without actual contact. In a standard dictionary an illustration of the larger meaning of the word is given in this form: "Things are *adjacent* when they lie near to each other, without actually touching, as adjacent fields, adjacent villages," etc. It seems unreasonable to say that in this connection the word refers to the government subdivisions lying next the right of way, and if we should so declare it would be difficult to point out what subdivisions are meant.

Accepting the larger meaning of the word, the right to take timber from public lands, under these acts, extends naturally some distance from the right of way, and probably within ordinary transportation by wagon. If, however, this is the adjacency referred to in the acts of congress, shall the beneficaries of those acts be allowed to establish authority by means of the very structure which they are authorized to

build? Having constructed a part of their road, shall they then say that all places so connected are adjacent to each other? I am unable to accept that view. In railroad parlance, things widely separated may be pretty near together, but it is not so in the ordinary use of language. In my judgment the acts of 1872 and 1875 contemplate the use of material from public lands while the road·is in process of construction, and afterwards for repairs under the act of 1872, within such convenient distance from such lands as may be reached by ordinary transportation by wagons, and not otherwise. The use of the road in carrying such materials to points distant from the place of taking is not within those acts. For timber taken from public lands, and carried to points remote from the place of taking, whether used by defendant corporation or by ·others, defendants are liable in trespass for the value.

As before stated, it appears that a considerable part of the timber in controversy was carried a long way from the place of taking, and, as to the remainder, the place of using it is not shown. On that point the burden of proof is upon defendants. The government was bound to prove, in the first instance, a fact admitted in these cases, that the timber was taken from public lands. With that fact established whether the use made of it was such as the law authorizes is a matter peculiarly within defendant's knowledge, and usually beyond the reach of inquiry by the government. In such case, whether the proposition be affirmative or negative, the burden is upon the party having such knowledge. 1 Whart. Ev. § 367. In the absence of evidence to show that the timber was used in a place adjacent to that from which it was taken, plaintiff is entitled to judgment.

Another question which is perhaps presented in the record as to the right of the railroad company, organized in 1886, to take timber for repairs under the act of 1872, was not discussed at the bar, and has not been considered; and several questions relating to the use made of the timber have not been reached, and are not decided.

The judgment in each case will be for the plaintiff for the amount specified in the statement of facts.