BACHELDOR v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

No. 940.

PUBLIC LANDS — RAILROAD RIGHT OF WAY — TAKING TIMBER FROM ADJACENT LANDS.

Under the act of June 8, 1872 (17 Stat. 339), which authorizes the Denver & Rio Grande Railway Company to take timber and materials for construction purposes from the public lands "adjacent" to its line, the company is not confined to the townships through which the road runs, or those adjoining them; nor is the cutting of timber 25 miles from the road, in itself, as a matter of law, unlawful. The meaning of "adjacent" is a mixed question of law and fact for the jury, under proper instructions, and a proper test is whether the timber is within reasonable hauling distance by wagons. 48 Pac. 310, reversed.

In Error to the Supreme Court of the Territory of New Mexico.

Samuel L. Bacheldor, the plaintiff in error, was indicted in the territorial court for the First judicial district of the territory of New Mexico, for unlawfully cutting certain timber on public lands in said territory. He justified the cutting and removal of the timber in question on the ground that he was an agent of the Denver & Rio Grande Railroad Company, and that the timber had been cut for the benefit of the railroad company, in pursuance of the provisions of an act of congress approved June 8, 1872 (17 Stat. 339, c. 354), which granted to the Denver & Rio Grande Railway Company, now the Denver & Rio Grande Railroad Company, a right of way over the public domain 100 feet in width on each side of the track, together with such public lands "adjacent" thereto as might be needed for depots, shops, and other buildings for railroad purposes, and authorized it "to take from the public lands adjacent thereto, stone, timber, earth, water and other material required for the construction and repair of its railway and telegraph line." The evidence showed that the timber in question was cut from land 21½ miles distant from the line of the Denver & Rio Grande Railroad, or about 25 miles distant therefrom by wagon road, and that there was no timber, nearer than that which had been taken, on either side of that part of the road. On the trial of the case the lower court instructed the jury, in substance, that the word or term, "adjacent," as used and applied in the act of congress aforesaid, meant the tier of townships lying adjoining on either side of the townships upon or through which the line and right of way of the Denver & Rio Grande Railroad runs; that, when the public lands are unsurveyed, the word "adjacent" meant relatively the same thing, as to limit of distance from the line or right of way; and that the word "township," as used in the court's instruction, meant an area of land six miles in extent north, south, east, and west, and was a legal subdivision, according to the official surveys, under the laws of the United States. As the timber which had been cut by the defendant below was cut outside of the limit of distance from the right of way that was defined by the foregoing instruction, the defendant was convicted, and, on an appeal taken to the supreme court of New Mexico, the conviction was affirmed by a divided court. 48 Pac. 310. The case has been brought to this court by a writ of error issued to the supreme court of the territory.

Joel F. Vaile (Edward O. Wolcott and Henry F. May, on the brief), for plaintiff in error.

Edward C. Stringer, U. S. Atty.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The sole question to be considered upon this record is the meaning of the word "adjacent," as used in the act of congress of June 8, 1872, the substance of which is quoted above in the statement. This question has given rise to some difference of opinion among the various courts who have had occasion to consider it. In one case it was held that lands lying at a considerable distance from the line of the defendant's road were adjacent thereto, within the fair intent and meaning of the statute, if they were within reasonable hauling distance by wagon. U. S. v. Denver & R. G. Ry. Co., 31 Fed. 886, 889. In another case, which arose under the act of March 3, 1875 (18 Stat. 482, c. 152), it was thought that lands were adjacent to a railroad track, within the purview of the act, if they were near enough to be directly and materially benefited by the construction of the road. U. S. v. Chaplin, 31 Fed. 890. In another case it was held, under the act of March 3, 1875, above cited, that timber standing on land 50 miles distant from the right of way was not on land adjacent thereto. Stone v. U. S., 29 U. S. App. 32, 12 C. C. A. 451, and 64 Fed. 667. The case at bar is the first, we believe, in which it has been ruled that, under the act of June 8, 1872, timber cannot be taken from the public domain by the defendant company, for the purposes named in the act, unless it is taken from lands lying in the townships through which its road is located, or from lands lying in the tier of townships next adjoining said townships on either side. If congress had intended to limit the defendant's right to take timber and other materials, for the construction of its road, to the townships last aforesaid, it would most likely have so declared in plain language, and thus have freed the act from all doubt and uncertainty as to its meaning. The fact that congress did not do so when conferring the right in question, but used the word "adjacent," which is purely a relative term, and may be understood differently when applied to different objects or under different circumstances, is very persuasive evidence that congress did not intend to fix an arbitrary line on each side of the defendant's right of way, beyond which the right to take timber and other materials should not extend. The use of the phrase "lands adjacent" to the right of way, instead of fixing a more precise limit, as might well have been done by reference to the public surveys, indicates, we think, that it was not the intention of congress to confine the privilege in question to particular townships or sections lying along the right of way, but that its purpose was to leave the right to take timber and other materials to be governed by circumstances. Congress intended to offer substantial inducements for the construction of railroads in certain sections of the country where timber suitable for railroad construction was

known to be scarce, and in many places distant from the lines of road to be benefited, as they would be projected and built. For that reason it did not establish a fixed line on either side of the right of way, which, if established, would at times render the privilege of taking material valueless; but it chose to confer the privilege in such terms as would allow the land department, and courts and juries as well, some discretion in determining, under different conditions, what was a proper limit within which it might be exercised. It accordingly authorized timber and other materials to be taken from adjacent lands, leaving those whose duty it would be to see that the right was not abused, but was exercised in a reasonable manner, to decide in any given case whether the land from which material had been obtained was adjacent to the right of way, within the spirit and intent of the act. For these reasons we cannot approve of the instruction which was given by the trial court, because it contains a definition of the term "adjacent" which, in our judgment, was not contemplated by the lawmaker.

Assuming, then, as above indicated, that in cases arising under the acts of June 8, 1872, and March 3, 1875, above cited, the question whether timber or other materials have been taken from lands adjacent to the right of way of a railroad, is usually a mixed question of law and fact, and that it cannot always be decided as a pure matter of law, it becomes necessary to determine what is the proper test by which the question should be determined. It is obvious, we think, that congress did not intend to grant a general right to take timber from any part of the public domain wherever it was most convenient to take it. The use of the word "adjacent" is of much significance, and renders it necessary in all cases to consider, in the first instance, whether the land from which timber has been obtained for the construction of a railroad is near to or remote from the right of way. The inquiry whether it has been transported a considerable distance, or only a few miles, is always an important consideration. Probably no better or more reasonable test can be applied than that which was first suggested by Judge Hallett in U. S. v. Denver & R. G. Ry. Co., 31 Fed. 886, 889, namely, that timber should be regarded as adjacent to the right of way of a railroad, without reference to township or section lines, if it is within reasonable hauling distance by wagon. It is generally the case that timber suitable for railroad construction will not bear transportation by wagon from points remote from the established line of road, by reason of the expense incident to transporting it. If railroads, therefore, are limited in their right to take timber from the public domain to such timber standing on either side of their rights of way as they can reasonably afford to haul by wagon from the place where it is cut, it is probable that they will realize the full benefit of the privilege which congress intended to confer, and that the privilege will not be abused. In a case which presents conditions like the one at bar, and in others which may arise, no court can say, as a matter of law, that a trespass was committed because the timber was taken from a place 25 miles distant by wagon road from the defendant's right of way; but it should be left to a jury of the vicinage to determine,

under instructions from the court such as we have substantially outlined, whether the right accorded by the statute was fairly exercised as congress intended it should be, or whether, by reason of the distance from which the timber in question was drawn, the defendant should be regarded as a trespasser. The judgment of the territorial court for the First judicial district of the territory of New Mexico, and the judgment of the supreme court of the territory of New Mexico as well, are both reversed, and the case is remanded to the territorial court for the First judicial district of said territory for a new trial.