### UNITED STATES v. ST. ANTHONY R. CO.

(Circuit Court of Appeals, Ninth Circuit. March 3, 1902.)

No. 731.

1. PUBLIC LANDS—CUTTING TIMBER—RIGHT OF RAILROAD.

Under Act March 3, 1875, § 1, granting railroad companies the right of way through public lands, with right to take from public land "adjacent" to the line of railroad timber necessary for the construction of the road, timber cut at a distance from the road of 17 to 23 miles by air line, 20 to 25 miles by wagon road, and 22 to 26 miles by the windings of a river down which some of it was floated, was taken from "adjacent" land, within the meaning of the act; it appearing that it was a barren, frontier country, with no suitable timber nearer than that taken, and that the lands from which it was taken were materially benefited by the road, and the timber could be hauled that distance with reasonable profit.

2. STATUTE—CONSTRUCTION.

In Act March 3, 1875, § 1, the meaning of the word "adjacent," as applied to public lands, should be determined by the evidence in each particular case.

In Error to the Circuit Court of the United States for the Southern Division of the District of Idaho.

This is an action to recover from the defendant in error the value of timber cut by it upon the public lands of the United States in Idaho for use in the construction of the railroad of the defendant in error. After the filing of complaint and answer, the case was submitted to the lower court upon an agreed statement of facts, substantially as follows: The plaintiff in error was the owner and in possession of the lands described in the complaint. During the summer and fall of the year 1889 the defendant in error, an Idaho corporation, entered upon the said lands, and, through its agents and representatives, cut and removed therefrom 1,682,975 feet of timber, of the manufactured value of $12.35 per thousand feet, and of a stumpage value of $1.50 per thousand feet, and used the same in the construction of its railroad between Idaho Falls, in Bingham county, and St. Anthony, in Fremont county, state of Idaho, a distance of approximately 40 miles. Said railroad passed through public lands of the United States, and the defendant in error had duly complied with all the requirements of the act of March 3, 1875, granting to railroad companies the right of way through the public land of the United States, and became entitled to the benefits and privileges therein granted to railroad companies. The timber was cut at a distance from the road of 17 to 23 miles by air line, from 20 to 25 miles by wagon road, and from 22 to 26 miles following the windings of the river, down which much of the timber was rafted. The remaining portion was hauled by wagon, the road being a good one, with no unusual grades; and the timber could be hauled by wagon to the place where it was used with reasonable profit. There was no other suitable timber-bearing land upon either side of the line of the railroad as near as were the lands in question, and said lands were so situated with reference to said railroad as to be benefited thereby. It is admitted that the defendant in error, in going upon said lands and cutting and removing timber therefrom, did not act under a mistake of fact, but believed that it had the right to do so, using ordinary care and prudence, and acting under the advice of its counsel. Upon the questions involved in this statement of facts the court below rendered its decision in favor of the defendant railroad company, and the plaintiff sued out a writ of error thereupon to this court.

R. V. Cozier, U. S. Atty.

P. L. Williams and F. S. Dietrich, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error present this question: Were the lands from which the timber was cut by the defendant in error "adjacent" to the line of its railroad, within the meaning of the act of March 3, 1875? Section 1 of the said act provides:

"The right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, * * * which shall have filed with the secretary of the interior a copy of its articles of incorporation and the proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take from the public land adjacent to the line of said road, material, earth, stone and timber necessary for the construction of its said railroad." 18 Stat. 482.

It is contended by the plaintiff in error that the word "adjacent," in this section, should be construed to mean "in proximity to," "contiguous," or "near" the line of the railroad, and that the distance of 17 to 26 miles cannot reasonably come within such a definition. The section has been variously construed by the trial courts, but not definitely passed upon by the court of last resort. In U. S. v. Denver & R. G. R. Co. (D. C.) 31 Fed. 886, the court construed the language of the act as intending to indicate such timber and other materials as

could be conveniently reached by ordinary transportation by wagons. In U. S. v. Chaplin (C. C.) 31 Fed. 890, land was declared to be "adjacent," within the purpose and intent of the act, when by reason of its proximity thereto it is directly and materially benefited by the construction of the railroad. And in U. S. v. Lynde (C. C.) 47 Fed. 297, 300, the court expressed the opinion that just what should be considered adjacent land must be determined by the evidence in each particular case. The latter view has met with the approval of this court, as indicated by the opinion of Judge Hawley in Stone v. U. S., 12 C. C. A. 451, 64 Fed. 667, 29 U. S. App. 32. No exact definition was there attempted, the court merely holding that, "under the facts presented," a reasonable construction of the language of the act would not permit the timber land in question to be deemed adjacent to the line of railroad of the defendant company. This decision was affirmed by the supreme court of the United States (Stone v. U. S., 167 U. S. 178, 191, 17 Sup. Ct. 778, 42 L. Ed. 127), without further determining the boundary of adjacency contemplated by the act of congress. The court concurred with the view expressed in Denver & R. G. R. Co. v. U. S. (C. C.) 34 Fed. 838, 841, that congress did not intend to grant anything like a general right to take timber from land where it was most convenient, but, other than this expression, did not attempt to interpret the language of the act, and left the decision dependent upon the particular facts presented.

It is well settled that, while public grants are to be construed strictly against the grantees, they are not to be so construed as to defeat the intent of the legislature, or to withhold what is given either expressly or by necessary or fair implication. And to ascertain that intent it is often necessary to look to the condition of the country when the acts were passed, as well as to the purposes declared on their face, and read all parts of them together. Railroad Co. v. Barney, 113 U. S. 618, 625, 5 Sup. Ct. 606, 28 L. Ed. 1109. In U. S. v. Denver & R. G. R. Co., 150 U. S. 1, 15, 14 Sup. Ct. 11, 37 L. Ed. 975, this rule of construction was held to be properly applicable to the act of 1875 in controversy in the present action. In that case the timber was cut from lands adjacent to the line of railway of the defendant, but was used in the construction of its road at points distant from the place at which it was taken. Under the rule of construction above stated, it was held to be the purpose of congress to aid railroad companies entitled to the benefits of the act by conferring the right to take timber necessary for road construction from adjacent public lands, and use it upon distant portions of their lines. Applying, then, this liberal construction of the act to the facts before us, we are entitled to consider that the road under construction passed through a barren, frontier country; that, according to the admitted facts, there was no suitable timber upon either side of the said road nearer than the lands in question, and that said lands from which the timber was cut were near enough and so located with reference to said road as to be directly and materially benefited thereby; that said timber could be hauled by wagon to said railroad with reasonable profit. These conditions are important in considering whether the privilege conferred by congress has been properly exercised, and whether the mutual benefits contemplated by

the act are likely to be realized. The case of Bacheldor v. U. S., 28
C. C. A. 246, 83 Fed. 986, presented a similar state of facts to the one
at bar. Bacheldor, acting for the Denver & Rio Grande Railway
Company, had cut timber from government land some 25 miles distant
by wagon road from the line of railroad, in the construction of which
it was to be used. No suitable timber could be found nearer. The
trial court instructed the jury that the word "adjacent," as used in the
act of congress authorizing the cutting of timber for railroad con-
struction, meant the tier of townships lying adjoining on either side
of the townships upon or through which the line and right of way
of the proposed railroad passed. The supreme court of the territory
of New Mexico affirmed the conviction of Bacheldor, but the judg-
ments of both courts were reversed by the circuit court of appeals for
the Eighth circuit; Judge Thayer, speaking for the court, declaring
that no court can say, as a matter of law, that a trespass was commit-
ted because timber was taken from a place 25 miles distant by wagon
road from the right of way of the railroad, but it should be left to a
jury of the vicinage to determine, under proper instructions from the
court, whether the right accorded by the statute was fairly exercised,
as congress intended it should be. The fact that congress did not in
definite terms limit the right to take timber and other materials to
adjoining townships, but used the word "adjacent,"—a purely relative
term, which may be understood differently when applied to different
objects or under different circumstances,—was there considered very
persuasive evidence that congress did not intend to fix an arbitrary
line, beyond which the right to take timber and other materials should
not extend, but that its purpose was to leave such right to be governed
by circumstances. It was further said:

"Congress intended to offer substantial inducements for the construction
of railroads in certain sections of the country where timber suitable for
railroad construction was known to be scarce, and in many places distant
from the lines of road to be benefited, as they would be projected and built.
For that reason it did not establish a fixed line on either side of the right
of way, which, if established, would at times render the privilege of taking
material valueless; but it chose to confer the privilege in such terms as
would allow the land department, and courts and juries as well, some discre-
tion in determining, under different conditions, what was a proper limit
within which it might be exercised. It accordingly authorized timber and
other materials to be taken from adjacent lands, leaving those whose duty
it would be to see that the right was not abused, but was exercised in a
reasonable manner, to decide in any given case whether the land from
which material had been obtained was adjacent to the right of way, within
the spirit and intent of the act."

We are in accord with this construction of the act. And while,
under some circumstances, the cutting of timber from public lands at
a distance of from 17 to 26 miles from the line of railroad under con-
struction would undoubtedly be deemed a trespass, as without the
meaning of the word "adjacent" in said act, the circumstances of the
present case do not warrant such a holding. No injury appears to
have been suffered by the plaintiff in error by reason of the act of the
defendant in error. On the contrary, the land from which the timber
was cut is admittedly benefited by the construction of the railroad,
and, under all the conditions existing, it should be considered to be

"adjacent" to the line of railroad constructed by the defendant in error, as contemplated by the act of 1875.

The judgment of the circuit court is affirmed.