DENVER & R. G. R. CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 7, 1903.)

No. 1,874.

1. PRELIMINARY INJUNCTION—PURPOSE.

The purpose of a preliminary injunction is to protect and preserve the rights of all the litigants with the least injury to each until the controversies between them can be tried and finally decided.

2. SAME—WHEN GRANTED—STATUS QUO.

A preliminary injunction to maintain the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small if it is granted.

3. SAME—WHEN MODIFIED.

A preliminary injunction may be modified when by such a modification the injury or inconvenience of one or more of the litigants may be de-

¶ 2. See Injunction, vol. 27, Cent. Dig. §§ 86, 305, 306.

creased without thereby increasing the danger of loss or injury to their opponent.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

The opinion of the Circuit Court, delivered orally by Hallett, District Judge, was as follows:

In the pending suit of the government against the Denver & Rio Grande Railroad Company et al., I have reached the conclusion that the injunction ought to be allowed. I do not doubt that the respondent has in some measure and degree exceeded the authority conferred upon it by the acts of Congress under which it has acted. I shall not at this time undertake to set down the particulars upon which that judgment rests, leaving those matters for consideration at the final hearing of the cause. I do not doubt, also, that there may be a remedy in equity for such matters as are charged in the bill of complaint. The doctrine as to the remedy in equity for cutting timber trees, despoiling lands of their timber, which prevailed in the early days of New York and New Jersey and other Eastern states, has, in my judgment, no application to an arid country, such as this is. I think, furthermore, that it has no application whatever to government lands, and to a proceeding on the part of the government to preserve any part of its lands for the use of citizens in the way in which they are ordinarily granted. I need not go upon that subject any further.

But there is another ground of jurisdiction which seems to me to be entirely satisfactory, if there were no other. These depredations upon the government land are ordinarily committed by what are known as "sawmill men," and they are of a fugacious and predaceous disposition, which renders the action of trespass at law entirely useless in any effort to collect the value of the timber. This consideration controls very largely as to what shall be done with the timber which is now upon the ground, which has been put into logs or into lumber, and is held by several of the defendants who are sawmill companies or corporations. I think that it is not reasonable or prudent to deliver this lumber, in the amount and value as stated, over to these parties, to be disposed of as they shall think fit. At the same time, I am not quite able to assent to the proposition made by counsel for the government, that the lumber may well enough stand until the determination of the suit. These suits must last a long time. They must go through this court and through courts of review, and this takes considerable time. There is great danger of fire and other destruction meanwhile. So that I think some steps ought to be taken towards disposing of this property. Counsel has disclaimed the idea of a receiver, and wisely so, I think, because I do not believe that the case stands for a receiver—at least not as yet. I think that we may wisely enough take steps towards getting an inventory of the property where it is now, and when that shall be completed we may give these companies who have possession of it an opportunity to dispose of it in some way, and under some rules to be prescribed at that time, if they shall desire to do so. This inventory may be taken by an officer of the court, by and with the aid and assistance of these parties, or otherwise, as they may prefer. If they do not care to participate in the inventory, we can go on without their assistance; but if they wish to make such an application to the court hereafter, as they will be allowed to make, to take steps towards selling the property or disposing of it otherwise under the act of Congress, perhaps we may be inclined to allow the Rio Grande Company to take such parts of it as have been manufactured for its use. But however that may be, those matters stand over for consideration. At present I am inclined only to appoint an officer to proceed with this inventory, and to report to the court hereafter when he shall be able to complete it. For that purpose Mr. Marshall Johnson will be appointed, who, I am advised, is proficient in figures, and knows how to do such work. Otherwise the injunction may stand until the further order of the court in the terms in which it has been

heretofore allowed. The government cannot in any case give bond, and cannot be required to do so here.

Joel F. Vaile and E. F. Richardson (Edward O. Wolcott and Charles W. Waterman, on the brief), for appellants.

Marsden C. Burch and John H. Knaebel, for appellee.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge.   This is an appeal from an order granting a preliminary injunction restraining the Denver & Rio Grande Railroad Company and the other defendants, who are its agents, from cutting and removing timber from certain lands of the United States under the act of June 8, 1872 (17 Stat. 339, c. 354), which granted to the predecessor of this railroad company the right to take from the public lands adjacent to its right of way stone, timber, earth, water, and other material required for the construction and repair of its line of railway and telegraph line, and under the act of March 3, 1875, 18 Stat. 482, c. 152, § 1 [U. S. Comp. St. 1901, p. 1568], which granted a similar right to this and other railway companies to take timber required for the construction of their railroads.

The Denver & Rio Grande Railway Company, the predecessor of this defendant, by its articles of incorporation secured the franchise to construct and operate eight lines of railway, which were numbered and specified in the articles.   The first and sixth of these lines were the Denver & Rio Grande Railway and the San Juan Railway.   The San Juan Railway connects with the Denver & Rio Grande Railway, and these and other railways named in the articles now form the railway system of the appellant the Denver & Rio Grande Railroad Company.   The agents of this company who are named with it as defendants are logging railroad companies, which constructed and are operating railroads extending from the San Juan Railway to places distant from 10 to 30 miles from it, sawmill companies, and officers of these various corporations, who were all together engaged in cutting timber from the land of the government distant from 10 to 20 miles from the San Juan Railway, under orders of the railroad company, and in manufacturing this timber into the ties and bridge timbers required by the railroad company for the construction and repair of its railroads.   In the manufacture of the logs thus taken from the government land into ties and timber, the mill companies were appropriating to their own use, manufacturing into shingles, laths, boards, and other lumber, the side cuts taken from the logs in making the ties and bridge timbers, and those logs which after they arrived at the mills proved, on account of rot or other defects, inapplicable to the uses of the railroad company.   The railroad company was using the ties and timber it obtained in this way upon parts of its system other than the San Juan Railway, and the government insisted that it had no right to take timber from lands adjacent to one of the lines specified in the original charter to construct or repair any other of those lines.

The railroad company had the admitted right to take timber from lands adjacent to its railroad to repair that portion of it which was

constructed on or before June 8, 1882 (19 Stat. 405, c. 126). But the portion of its railway thus constructed was a narrow-gauge railroad, and the company was taking the ties and timber from lands which it claimed were adjacent to make this narrow-gauge railroad a broad-gauge railway. The United States insisted that this was the taking of timber to construct a new railroad, and not to repair an old one.

The application for the injunction was heard upon the bill, answer, and opposing affidavits, and it presented these questions:

(1) Were the lands from which the defendants were taking the timber adjacent to the right of way of the Denver & Rio Grande Railroad Company?

(2) Had the railroad company the right to take timber from government lands adjacent to its right of way to make the narrow-gauge railroad which was built prior to June 8, 1882, over into a broad-gauge railroad, or to repair a broad-gauge railroad after such a change had been made?

(3) Had the railroad company the right to take timber from lands adjacent to one of the lines of railway numbered and specified in the original grant of its franchise to its predecessor, and use this timber to repair another of those lines?

(4) Had the railroad company or its agents the right to the surplus lumber arising from logs found inapplicable, on account of rot or other latent defects, to the uses of the railroad company, after they arrived at the mills, and from the side cuts of the logs that were used for railroad purposes?

(5) Conceding that the railroad company had the right to take timber from lands adjacent to its right of way for the purposes for which it was obtaining the timber in controversy, that the lands from which it was removing this timber were adjacent, and that the railroad company was entitled to the surplus lumber after extracting from the logs the timber it needed, was it abusing this right, wasting the timber, and recklessly or designedly creating an unnecessary excess for its own benefit or that of its agents, to the manifest injury of the government?

The first four of these questions are grave and difficult. They must in any event be considered and decided at the final hearing of the case, after the ex parte affidavits now before us have performed their function, and the truth has been extracted by the more satisfactory process of the examination and cross-examination of the witnesses for the respective parties. In this state of the case, it is neither requisite nor fitting that these questions should be determined upon this hearing, and no opinion upon them is either formed or expressed. The limit of the endeavor of this court upon this appeal will be to so protect the rights of all the parties to this suit that, whatever may be the ultimate decision of these issues, the injury to each may be reduced to the minimum. The record before us presents indisputable evidence that this was the controlling purpose of the court below. It granted an injunction against the abuse of the right of the railroad company, but it did not prohibit the exercise of that right. It prohibited the company from taking timber from lands more than

three miles distant laterally from its railroad, but it permitted it to take trees within that limit.

The granting or withholding of a preliminary injunction always rests in the sound judicial discretion of the court. The question presented on an appeal from an order granting such an injunction always is whether or not, under the established legal principles which should have guided the court below, it erred in the exercise of its discretion. While counsel for the railroad company insist that the surplus lumber arising from the defective logs and from side cuts was the property of the company, they concede that it was the duty of that corporation to use economically and advantageously the timber which it took, so that the excess would be as small as possible, and the loss to the government as slight as it could be made. While they insist that the timber was not taken from lands more than 12 miles distant from the right of way of the Denver and Rio Grande Railroad Company, and that these lands were adjacent to that right of way, they concede that no definite limit to lands adjacent to a railroad under these acts of Congress has ever been fixed, and that the most rational and generally accepted definition of "adjacent lands" under these acts is that originally given by the learned judge who granted this injunction—that they are lands upon which the timber is within reasonable hauling distance of the railroad by wagon. U. S. v. Denver & R. G. Ry. Co. (D. C.) 31 Fed. 886, 889; Bacheldor v. U. S., 83 Fed. 986, 987, 28 C. C. A. 246, 247; U. S. v. St. Anthony R. Co., 114 Fed. 722, 725, 52 C. C. A. 354, 357.

A careful examination of the pleadings and affidavits in this record has failed to convince us that the Circuit Court erred in granting an injunction in this case, or that the appellants were not abusing the privilege granted to the railroad company by the acts of Congress. A review of the affidavits filed upon the hearing below would finally determine nothing, and would serve no useful purpose in this or any future litigation. It is enough to say that the evidence which the pleadings and affidavits present falls short of overcoming the legal presumption that the finding and conclusion of the court below were right. It discloses no such mistake of fact or error of law as would warrant a reversal of the action of that court. But on the other hand it is strongly persuasive that the appellants were either recklessly or designedly abusing the privilege of the railroad company, and making an unnecessary and valuable surplus of lumber for their own use, to the serious injury of the government. A striking illustration of the course which they pursued is disclosed by one of the specifications for ties which the railroad company directed its agents to manufacture and to furnish for its use. This specification required that they "must be full 7″ thick and 8 in. face and 8 ft. long. They will not vary more than one inch from specified length. They must be cut from perfectly sound timber and sawed free from warts. At least 80 per cent. of the ties shall be of all heart yellow pine and show no sap on either end. The balance of the ties shall not show to exceed one-fifth the area of sap at either end." The taking of trees of the United States to make ties of this character, so that all the remainder of the trees taken should become merchantable

lumber of the railroad company or of its agents, goes far to show a settled purpose to create an unnecessarily large excess of merchantable lumber, which was not to be used by the railroad company for the purposes specified in the acts of Congress, and to negative the claim of the appellants that they were either carefully or economically exercising the privilege of the company. The case falls well within the established rule that a preliminary injunction maintaining the status quo may properly issue whenever the questions of law or of fact to be ultimately determined are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small if it is granted. City of Newton v. Levis, 79 Fed. 715, 718, 25 C. C. A. 161, 163; Great Western Ry. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 597, 602; Glascott v. Lang, 3 Mylne & C. 451, 455; Shrewsbury & C. Ry. Co. v. Shrewsbury & B. Ry. Co., 1 Sim. (N. S.) 410, 426; Georgia v. Brailsford, 2 Dall. 402, 1 L. Ed. 433, 438; Blount v. Societe Anonyme du Filtre, 3 C. C. A. 455, 53 Fed. 98; Hadden v. Dooley, 20 C. C. A. 494, 74 Fed. 429; Jensen v. Norton, 12 C. C. A. 608, 64 Fed. 662. The order granting the injunction may not be reversed.

Counsel for the appellants insist, however, that this injunction may safely be modified in some respects, so as to relieve their clients of much inconvenience and loss, and at the same time so as to adequately protect the property and the rights of the United States. If this contention is well founded, the modification should be made. The office of a preliminary injunction is not to punish for violations of the law, but merely to protect and preserve the rights of the parties until the controversies between them can be finally heard and determined.

The railroad company is solvent—liable and able to pay for any timber which the court shall ultimately find that it has wrongfully taken. The order granting the injunction requires it to report once in two months the timber it takes, and the places whence it obtains it and in which it places it. This order prohibits the railroad company from cutting or removing any timber from the lands of the government more than three miles distant laterally from the line of the railroad of the Denver & Rio Grande Railroad Company in 13 counties in the state of Colorado. It is probable that there are some places in this vast area where reasonable hauling distance of timber by wagon is more than three miles, and that no serious injury will result to the government if the limit within which the railroad company may take the timber is extended to six miles.

The railroad company is forbidden by this order to make use of any sawmill or sawmilling process in the manufacture of the timber it is permitted to take. This prohibition should be removed. The injury to the government, if any, arises from the taking of the timber, not from the process by which it is subsequently prepared for use. The United States could derive no benefit from compelling the railroad company to adopt more tedious and expensive methods of manufacturing, while such a course would entail an unnecessary burden upon that corporation.

124 F.—11

The order provides that, in case the court shall ultimately decide that any of the trees which the railroad company takes under it are obtained without the sanction of the acts of Congress, the company shall be charged with the manufactured value of the ties, or of the wooden materials made therefrom. The railroad company must ultimately be charged with the value of the property it wrongfully takes, but whether that value shall be the stumpage value or the manufactured value should be left for determination at the final hearing, after the evidence and the arguments have been presented to the court.

The order forbids the railroad company to cut, use, or apply any timber upon or from any of the lands for the purpose of repairing or reconstructing with standard-gauge ties any line of its railroad originally constructed upon the narrow-gauge plan. This inhibition may be safely removed. The question whether or not the railroad company has the right to take timber for such ties is a serious one, which must not be determined without grave consideration, nor before all the evidence and the arguments of counsel upon the final hearing are before the court. Meanwhile no serious injury will be inflicted upon the government if the railroad company is permitted to take and to report the timber and ties which it needs for this purpose, subject to the other restrictions which are contained in the order.

The order seems to forbid the railroad company from taking timber from lands adjacent to any one of the eight lines of railway numbered and specified in the original articles of incorporation for use in repairing any other of those eight lines. The question suggested by this statement is at least a debatable one, and this embargo may well be removed until the final hearing of the case. The act of Congress takes no note of the eight lines of railway, but grants the right to take the timber from lands adjacent to the right of way of the Denver & Rio Grande Railway Company, as though it had but one right of way and but one line, and it has been held that timber may be taken anywhere along the line of this railroad to construct any part of it. Denver & Rio Grande R. Co. v. U. S. (C. C.) 34 Fed. 838, 842; U. S. v. Denver, etc., Railway, 150 U. S. 1, 12, 14 Sup. Ct. 11, 37 L. Ed. 975.

The order and injunction appear to prohibit the railroad company and its agents from transporting the timber from the places of taking to the railroad by rail. The United States can derive no benefit from compelling the railroad company to transport logs or lumber by the use of teams, and the use of railroads for this purpose cannot inflict any injury upon the government. This embargo may therefore be raised.

It is accordingly ordered that the injunction and the order granting the injunction herein made by the Circuit Court on December 18, 1902, be, and the same are, so modified that the Denver & Rio Grande Railroad Company, until the further order of the Circuit Court, may within a distance of six miles laterally from any of its lines of railroad fell trees sufficient to furnish such ties or other wooden materials as may be lawfully appropriated and applied in

the repair of its lines of railroad, and out of such trees may cause such ties and other wooden materials to be properly manufactured or prepared either with or without the use of sawmills and sawmill processes; that within the same lateral distance of any line of its railroad not yet constructed it may, until the further order of the Circuit Court, fell trees upon the public lands sufficient in quantity to furnish such ties, or other wooden materials as may be lawfully appropriated and applied to the construction of such line, and may manufacture them by sawmill or other processes for the purpose of such construction; that it may transport such timber from the place of its taking by rail or otherwise; that for all timber, ties, and other wooden materials secured under this order to which it is not lawfully entitled the railroad company shall pay the value which shall be determined at the final hearing; that the railroad company may take timber under the terms of the original order, as hereby modified, to repair or reconstruct with standard-gauge ties any line of its railroad originally constructed upon the narrow-gauge plan prior to June 8, 1882; that all the restrictions and terms of the original injunction and order not expressly removed hereby remain in force; that the reports of the railroad company of the timber taken and the manufactured product shall include and separately state the surplus lumber not used for railroad purposes, the character, value, and disposition of the product manufactured therefrom; that the commissioner, Johnson, shall inspect the cutting, removal, and use of the timber taken under the order and injunction, as modified hereby, to the end that a careful compliance therewith may be secured, and shall report to the court from time to time; and that the railroad company shall seasonably notify the commissioner when and where it intends to cut and take timber in any considerable amount, so as to enable him to inspect it and report to the court before it is felled, if he should be so advised; and the injunction and order as thus modified are hereby affirmed, without costs.